Violet MONSMA, Appellant,

v.

Richard A. WILLIAMS, aka Richard Williams, Appellee.

No. 277.

Supreme Court of Alaska.

Sept. 5, 1963.

G. F. Boney of Burr, Boney & Pease, Anchorage, for appellant.

No appearance for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is a tort action brought to recover damages for injuries alleged by the plaintiff to have been received in the course of an attempted rape and sexual assault upon her by the defendant. The trial court, sitting without a jury, found for the defendant and the plaintiff has appealed. The principal questions presented by this appeal relate to the trial court's findings of fact.

On a night in September of 1961, the plaintiff and the defendant met in an Anchorage bar where they engaged in conversation and had a drink together. Between one and two o'clock in the morning the plaintiff decided that she should go look for her fiance with whom she was living

at the time and whom she later married. She left the bar in the company of the defendant as she had agreed to drive him to his home in her car. On the way the parties stopped at two other bars, where they also had some drinks and danced or just talked but did not find the missing fiance. They left the last bar at 3:30 a. m. and twenty minutes later arrived at a cabin on Klatt Road which, according to plaintiff, the defendant had indicated to her was his home.

The only eye witnesses to the alleged tort were the parties themselves, and there was sharp conflict in many pertinent parts of their testimony.

The plaintiff testified that upon arrival at the cabin, the defendant pulled her out of the car and told her that he intended to satisfy a secret desire of two years standing to have sexual intercourse with her. When she resisted his advances, he became angry and hit her in the shoulder with his fist, causing her to fall down. The defendant then jumped on top of her, pulled off her undergarments and committed a sodomous act upon her. Realizing the predicament she was in and suffering great pain in her shoulder, the plaintiff told the defendant that the ground, which was cold, wet and dirty, was not a proper place for what he wanted to do and that if he would go with her to her trailer, she "would go along with whatever he had in mind." In her attempts to persuade the defendant she kissed him twice. He was finally convinced and rode with the plaintiff to her trailer. Once there she jumped out of the car and ran into the trailer, the defendant following her. She apparently expected to find her fiance in the trailer, but he was not there. So she dashed on out through the back door and around to the front of the trailer, jumped into the car, and sped away to the home of one Betty Burrow, her fiance's secretary, to whom she told the story of what had happened to her.

The plaintiff also testified that she complained to the defendant about her aching shoulder and left arm and told him that he must have broken the arm. He showed some commiseration for any injury he may have caused her and said that he would pay any hospital and doctor bills resulting from the injury. She presumed that she had blood on her face because the defendant wiped her face on a white jacket lying in the car. She did have some bruises on her face which she thinks she may have gotten from rocks as she fought the defendant while the parties were on the ground. Soon after the plaintiff arrived at Betty Burrow's place her fiance was summoned. He called a police officer and then took the plaintiff to the hospital where a doctor treated her for a broken collarbone.

The defendant had a somewhat different story to tell. He admitted that he had attempted to have sexual relations with the plaintiff on the night in question, but insisted that her conduct in kissing and "petting" with him in the bars they visited led him to believe that she was amorously disposed toward him. He denied that he asked the plaintiff to take him home or that he represented to her that he lived in the cabin on Klatt Road. He denied striking the plaintiff or committing a sodomous act upon her and stated that he did not know how she may have been injured. In answer to the question whether there was more petting in the car as it was parked on Klatt Road, he answered: "Yes, and then we got out of the car and went around back and stood up back there and kissed and rolled down on the ground." All the while the parties were on Klatt Road the plaintiff never objected to the defendant putting his hands on her.

The defendant also testified that the plaintiff complained about the dirt and suggested that the parties go to her trailer where there was a bed; that she never once complained about a shoulder injury; and that she drove the car to the trailer. While still on Klatt Road the plaintiff had said to the defendant that she would have her fiance shoot or kill him. Then on the way to the trailer she informed the defendant that her fiance would be at the trailer.

These statements by the plaintiff seem to have persuaded the defendant not to venture into the trailer with the plaintiff. For, as he testified, if the plaintiff's fiance was in the trailer he did not want to go in, instead he "got out of that car and walked right home."

The record shows that six days after the incident on Klatt Road a misdemeanor complaint was filed in the district magistrate court at Anchorage charging the defendant with assaulting the plaintiff on September 16, 1961, "by grabbing her with his hands and throwing her to the ground." The defendant, upon advice of counsel, pleaded guilty to the charge and was sentenced to pay a fine of $100, of which amount $75 was suspended. When asked on cross examination below why he pleaded guilty in the district magistrate court, the defendant replied:

"Well, I was * * * (not discernible) just for the simply [sic] fact that I didn't have any money I couldn't * * * go to court, and it wasn't going to cost much and just to get it out my head, I, my hair, I just went ahead and got it over with."

Although the plaintiff had testified that she fought with the defendant on the ground and resisted him to the full measure of her strength, there was no evidence produced at the trial of any marks upon the defendant indicating the resistance she claims to have made. In a pretrial disposition the defendant had said that the plaintiff did resist him. At the trial he was prompted by his counsel to explain that the plaintiff made no actual physical resistance but resisted only to the extent of requesting that the parties go to the trailer.

Other evidence in the record, worthy of note, is this: The plaintiff, at the time of her encounter with the defendant, was employed as a radio station sales representative and copy writer, thirty-one years of age, five feet five and one-half inches tall, and weighed about 129 pounds. She had two children, by a previous marriage. The plaintiff's fiance testified that she was a "pretty well built" individual and that any man trying to rape her would "have his hands full." The doctor, who attended the plaintiff and saw her shortly after she arrived at the hospital, testified that he could not remember seeing any discoloration or damage of the skin over the broken collarbone. He gave it as his opinion that a fall on the arm could have snapped the plaintiff's collarbone; and that it would take a fair amount of force to break a normal collarbone—"a little bit more force than perhaps you would get from being on the ground." Betty Burrows and the plaintiff's fiance testified that they saw marks and bruises and even dried blood on the plaintiff's face and that she was hysterical, disarrayed and complaining of a sore shoulder.

With the foregoing evidence before it, the trial court made findings of fact, among others, as follows:

## "V

"That the plaintiff and defendant, by mutual consent, attempted to engage in an act of sexual intercourse.

## "VI

"That the defendant placed his hands upon the plaintiff, and that while in a standing position the parties fell to the ground, both parties at this time having consumed a considerable amount of alcohol.

## "VII

"That as a result of the consumption of alcohol the parties fell to the ground, and the plaintiff suffered a fracture to her clavicle.

## "VIII

"That the plaintiff, as a result of the fall, was severely injured and required hospitalization, and incurred surgical expenses, and a subsequent loss of income.

## "X

"The Court finds that the plea of guilty, although persuasive, is not conclusive evidence of the facts elicited during this trial.

"XI"

"The Court gave great weight to the plea of guilty, but finds that the subsequent conduct of both parties is such that even though the defendant pleaded guilty to assault and battery, the evidence considered in its entirety indicates that the plaintiff acquiesced in all the events leading up to the fall."

The first issue [1] raised by the plaintiff is that the judgment and findings of the trial court are not supported by sufficient evidence. In effect she is asking this court to reweigh the evidence, practically all of which was oral testimony, and to substitute its judgment for that of the trial court. This we, as an appellate court, may not do, for under Civ.R. 52(a) where a case is tried to the court without a jury, the trial court's findings may not be disturbed on appeal unless they are clearly erroneous.[2]

The second issue raised by the plaintiff is that the trial judge decided the case under an erroneous theory of law. The gist of this argument seems to be that the trial judge mixed up two theories, neither of which is at all clearly delineated in the brief, and then arrived at a result (finding V) which is not consistent with either of the theories or with the evidence. She points out that there are actually two torts alleged in her complaint, namely, attempted rape and the battery resulting in the broken collarbone. With respect to the attempted rape, she claims that the court was wrong in deciding as a matter of law that the plaintiff's actions created a consent to sexual intercourse and in then theorizing that such consent could not be withdrawn. As to the alleged battery, which she defines as an unprivileged touching, the plaintiff contends that the trial court must have theorized that a battery did not occur because the plaintiff consented to the touching, or that, if there was an unprivileged touching of the plaintiff by the defendant, it was not the proximate cause of the broken collarbone but rather that a fall caused plaintiff's injury.

Regardless of what theories the trial judge may or may not have applied in reaching his decision, it is quite evident to us from his findings that he simply did not believe the testimony of the plaintiff that she had not consented to the attempted sexual intercourse between the parties on Klatt Road or that the defendant had struck her a blow in the shoulder with his fist. In short, the decision of the trial judge indicated his feeling that the plaintiff had not sustained her burden of proof.

The third contention of the plaintiff is that the lower court erred in failing to give proper weight to the criminal conviction of the defendant arising out of the same events as this civil action. We agree with her that a conviction on the plea of guilty of a defendant in a criminal action is admissible against him in a civil action growing out of the same offense,[3] and we recognize that it has been held that the evidence of conviction on such a plea is conclusive against the defendant in the civil action.[4] However, in most states, as the plaintiff admits, proof that the defendant pleaded guilty is not conclusive evidence against him in a subsequent civil action arising out of the same events as those in the criminal case.[5]

1. The plaintiff has specified fifteen errors in her opening brief. These she has resolved into ten questions presented for review and argued under five principal headings in the brief.

2. Chirikoff Island Cattle Corp. v. Robinette, Opinion No. 85, 372 P.2d 791, 792–794 (Alaska 1962); In re Kraft's Estate, Opinion No. 103, 374 P.2d 413, 416 (Alaska 1962); Nordin v. Zimmer, Opinion No. 96, 373 P.2d 738, 741–742 (Alaska 1962).

3. Spain v. Oregon-Washington R. R. & Nav. Co., 78 Or. 355, 153 P. 470, 473–474 (1915); Reynolds v. Donoho, 39 Wash.2d 451, 236 P.2d 552, 555 (1951); Annot., 31 A.L.R. 261, 278–79 (1924).

4. Erie R. R. Co. v. Reigherd, 166 F. 247, 250, 251, 20 L.R.A.,N.S., 295 (6th Cir., 1909).

5. Meyers v. Dillon, 39 Or. 581, 65 P. 867, 66 P. 814 (1901); Annot., 31 A.L.R. 261, 281 (1924).

Nevertheless, says the plaintiff, proof of the plea of guilty was entitled to great weight as an unqualified admission and this the trial court failed to give it in the light of all the evidence in the case.

The plaintiff has given us no sound reason why we should not under the circumstances of this case adopt for Alaska the majority rule that the defendant's plea of guilty in the prior criminal action was not conclusive against him in the present civil action. Furthermore, we accept the trial court's statement in finding X as true that it found the plea of guilty persuasive but not conclusive and we perceive no error in its finding XI "that even though the defendant pleaded guilty to assault and battery, the evidence considered in its entirety indicates that the plaintiff acquiesced in all the events leading up to the fall."

For the fourth principal heading of her brief the plaintiff alleges that findings of fact V, VI, VII, VIII, X and XI, quoted earlier in this opinion, are clearly erroneous and should be set aside. We have studied all the evidence contained in the record before us and conclude that there is no such clear error in any of those findings as to warrant our setting them aside. In a case, heavy with demeanor evidence as this was, it was the task of the trial court, not ours, to resolve the apparent conflict between the evidence of the plaintiff and that of the defendant.

Finally, the plaintiff charges that the trial court committed prejudicial error by finding in effect that plaintiff was guilty of contributory negligence by virtue of drinking and amorous affection. As the basis for this charge of error she points to the following excerpt from the trial judge's oral decision:

"I think the court can, using reasonable experience of what people do that probably what happened was that no question she was injured but probably through the mutual mistake of both in their amorous affection. * * *"

We interpret these words of the trial judge to mean that he considered the plaintiff to have acquiesced in the events on Klatt Road that culminated in her injury, not that she was guilty of contributory negligence. This meaning we attach to his words is supported by what he stated at the beginning of his oral decision, namely:

"[T]here's no question that the plaintiff in this case was injured, but the Court is not convinced that the plaintiff has borne the burden of proof for the preponderance of the evidence that this injury was caused through the misconduct or negligence of the defendant. * * *"

Having failed to find any prejudicial error, we affirm the judgment of the superior court.