**FAIRBANKS PUBLISHING COMPANY, an Alaska Corporation, Appellant,**

v.

**Elizabeth B. PITKA, Appellee.**

**No. 910.**

Supreme Court of Alaska.

Oct. 7, 1968.

Robert J. McNealy, Anchorage, Dan Riviera, of Garvin, Ashley & Foster, Seattle, Wash., for appellant.

Robert A. Parrish, Patrick E. Murphy, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

DIMOND, Justice.

This is a libel action arising from certain publications in appellant's newspaper, the Fairbanks Daily News-Miner. In 1961 a jury returned a verdict in appellee's favor for $6,000 compensatory damages, and $19,-000 punitive damages. On appeal we re-versed and remanded for a new trial. We held that the trial court had erred in failing to give an instruction on truth as a defense, in giving certain instructions on actual malice and punitive damages, and in stating that a publication made in 1958 was libelous in itself.[1] On remand the parties stipulated to waive a jury and to submit the case to the court on the transcript and evidence from the previous trial. The trial judge made findings of fact and conclusions of law and entered judgment in appellee's favor, awarding her damages in the amount of $15,000. This second appeal followed.

Appellee was a school teacher at North Pole, Alaska, a small community not far from the City of Fairbanks. In August 1957 she resigned her position, and then a few days later withdrew the resignation with consent of the North Pole School Board. On October 7, 1957, she wrote to the board stating that she wished to resign "effective in thirty days from this date". The minutes of a board meeting held the next day reflect a controversy regarding the effective date of termination of employment. The board wanted appellee to leave her position forthwith, whereas she insisted on completing the thirty days stated in her written resignation.

Appellee presumably continued teaching for the next ten days. Then on October 18 she received a letter from the board advising her of a meeting held that day at which a motion had been made and seconded "to relieve you of your duties as head teacher and teacher as of October 18, 1957".[2] Apparently appellee ignored this notice of termination, for on October

1. Fairbanks Publishing Co. v. Pitka, 376 P.2d 190 (Alaska 1962).

2. The letter reads:

   October 18, 1957

   Dear Mrs. Pitka:

   This is to inform you that the motion was made by Mrs. Nellie Miller and seconded by Mrs. Cunningham at the School Board special meeting held on October 18, 1957, to relieve you of your duties as head teacher and teacher as of October 18, 1957. The rea-son for the above action is that the School Board feels that you are a detriment to the welfare of the school, and you have already turned in your resignation dated October 7, 1957.

   Enclosed is your check covering 14 working days up to and including October 18th.

   Signed: Lowell P. Jenkins,
   President.
   Cecelia Davis,
   Clerk.

21, 1957, she was handed another letter from the board. This time she was advised not to enter upon the school property under penalty of a complaint being made with "law enforcing agencies to restrict you from doing so".[3] She was also told at that time by the board president, Lowell Jenkins, that if she went into the school she would be arrested. She nevertheless entered the school. Jenkins followed her in and again asked her to leave. When she refused, he arrested her for disturbing the peace[4] and took her before the deputy magistrate at North Pole where she was given an "arrest ticket" for "disturbing the peace".[5]

While appellee was at the magistrate's office she had an extended discussion with a reporter from the Fairbanks Daily News-Miner. That evening the paper carried a front page article regarding appellee's difficulties with the school board. There was a banner headline—"NORTH POLE TEACHER FIGHTS BOARD"—followed by sub-headlines reading as follows:

Territorial Police Called to Expel Fired Schoolmarm. Dispute at Outlying Community Finds Teacher Defying School Board; She Is Arrested for Disorderly Conduct.

These were the words which appellee claimed were false, malicious and defamatory, and upon which she based this libel action.[6]

The trial judge found that the foregoing publication was libelous in itself, since it had a natural tendency to diminish the esteem in which appellee was held and to result in a lack of confidence in her professional competence. This is what we had held on the first appeal.[7] The trial judge also found that all the statements of fact contained in the publication were false. The question that we must first decide is whether this finding of fact is clearly erroneous.[8]

▇ Findings of fact in a judge-tried case are not to be lightly disturbed. The reason is that the trial judge, who has seen and heard the testimony, is in a better position to judge the credibility of witnesses and the weight to be attached to their testimony than an appellate court reviewing a printed record.[9] That is why we have held in a number of instances that clear error is not shown unless we are left with the definite and firm conviction

3. The letter reads as follows:

October 20, 1957

Dear Mrs. Pitka:

This letter is to be hand delivered to you as per the minutes of a special meeting of the North Pole School Board on October 20, 1957, to inform you the the (sic) School Board is again advising you that we do not want you to enter in or on the school property and, if you do so, that, we will sign a complaint with the law enforcing agencies to restrict you from doing so.

This letter is authorization from the North Pole School Board for Lowell P. Jenkins to handle this case as the N. P. School Board authorized agent.

Signed: Lowell P. Jenkins, Pres.
Cecelia Davis, Clerk.

4. The general code of the City of North Pole makes it unlawful to "create a disturbance in a public place" and to "make any breach of the peace". These prohibited actions are included under the general category of "Disorderly Conduct".

5. Appellee was released at that time and a hearing was held by the magistrate on October 25. The magistrate advised her not to return to the school, and she agreed. She was then acquitted of the charge.

6. Appellee also relied upon another publication, made one year later, as being defamatory. This will be discussed later in the opinion.

7. Fairbanks Publishing Co. v. Pitka, 376 P.2d 190, 194 (Alaska 1962).

8. Civ.R. 52(a) provides in part:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

9. Kenai Power Corp. v. Strandberg, 415 P.2d 659, 660 (Alaska 1966); In re Duvall, 103 F.2d 653, 655 (7th Cir. 1939).

on the entire record that a trial judge's finding of fact was a mistake.[10]

It is unnecessary to pay such deference to the trial judge's findings where he has not seen and heard the witnesses. That is the situation here. The trial judge based his findings of fact on a review of the written transcript of the testimony at the first trial. We are reviewing the same transcript, and are in as good a position as the trial judge to determine issues of fact.[11]

The trial judge found to be false the statement made by appellant in its newspaper that appellee was engaged in a fight with her employer, that the police were called to expel her, and that she was arrested for disorderly conduct. We disagree with this finding, and have decided on the evidence that the statement is substantially true.

As we pointed out in our decision on the first appeal,[12] appellee's insistence on continuing her teaching job after being told she had been relieved of her duties and was no longer permitted to enter upon school property could legitimately be characterized as a "fight" with the school board and an act of defiance of the board's decision. The statement that appellee had been arrested for disorderly conduct could be justified by proof that she had been arrested for the specific offense of "disturbing the peace" which, according to the terms of the North Pole ordinance, was included in the definition of "disorderly

conduct".[13] The statement "territorial police called to expel fired schoolmarm" was erroneous. The police were not called for that purpose, but instead had been summoned by appellee because she thought she needed their protection. But she was actually expelled from the school when arrested by Jenkins who, among other things, was a North Pole police officer. Thus, the reported purpose for which the territorial police were called could be considered an immaterial variance from the literal truth. It is not necessary to prove the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.[14]

What is left, then, in the 1957 publication is a statement that appellee had been "fired" as a school teacher. We held on the first appeal that the combination of statements as to appellee being engaged in a fight with her employer, being expelled by the police, and being arrested for disorderly conduct, together with the allegation as to her being fired, was defamatory in itself. But we hold here that the assertions other than the one as to appellee being fired were true in substance. Since truth is a defense to an action for defamation, those charges cannot form the basis for imposing liability on appellant in this libel action. That being so, the charge that appellee was fired must be viewed, not coupled with the other charges, but by itself in determining whether it was defamatory.

10. Perkins v. Willacy, 431 P.2d 141, 142 (Alaska 1967); Ogden v. State, 395 P.2d 371 (Alaska 1964); Preferred Gen. Agency of Alaska v. Raffetto, 391 P.2d 951, 953 (Alaska 1964); Steward v. City of Anchorage, 391 P.2d 730, 731 (Alaska 1964); Link v. Patrick, 367 P.2d 157, 159 (Alaska 1961).

11. Shumaker v. Groboski Industries, Inc., 352 F.2d 837, 840 (7th Cir. 1965); Mid-Continent Cas. Co. v. Everett, 340 F.2d 65, 70 (10th Cir. 1965); Carter Oil Co. v. McQuigg, 112 F.2d 275, 279 (7th Cir.

1940). See Pepsi Cola Bottling Co. v. New Hampshire Ins. Co., 407 P.2d 1009, 1014 (Alaska 1965).

12. Fairbanks Publishing Co. v. Pitka, 376 P.2d 190, 193 (Alaska 1962).

13. See note 4 supra.

14. Restatement of Torts § 582, comment e, at 218 (1938). See also Yankwich, It's Libel or Contempt if You Print It, 362–67 (1950); Hearne v. De Young, 119 Cal. 670, 52 P. 150, 151–152, 499 (1898).

Although the record indicates that appellee may indeed have been fired,[15] for some reason which is unexplained appellant admitted in its answer to appellee's complaint that she had not been fired. Thus, we are faced with the proposition that the assertion as to appellee being fired was false, so that the defense of truth cannot be availed of. The question to be decided, then, is whether this charge was defamatory.

■ The assertion that one had been fired from his employment is not defamatory per se, i. e., as a matter of law. As we stated on the first appeal:

The right to hire implies the right to fire, and therefore a statement that the latter right has been exercised by one's employer does not necessarily have a tendency to injure or discredit the employee who has been discharged.[16]

We further stated:

There was here at least a question for the jury as to whether the publication was in fact understood by those to whom it was addressed in a sense which made it defamatory.[17]

■ There was no jury to decide this question at the second trial. As we have already stated, since the trial judge made his decision based on a written transcript of the first trial, we are in as good a position as he to determine whether those to whom the newspaper article was addressed understood the publication in a sense which made it defamatory. We hold that reasonable minded persons would not so understand the publication. We shall not attempt to delineate instances where an untrue statement that one had been fired would be defamatory. Suffice it to say that such is not the situation here. The central theme of the newspaper article complained of dealt with the dispute between appellee and her employer. Where a dispute exists between an employer and employee, it is a natural, and probably expected thing to hear that the employee was fired, or discharged from his employment. In such a situation one would not ordinarily think ill of the employee who lost his job—he would not necessarily be discredited or injured by reason of a published story that he had been fired, when in fact he may have resigned instead. We hold that the statement that appellee was fired was not defamatory so as to justify an award of damages to appellee.

There was another publication which appellee claimed was defamatory. It was made a year later, on October 22, 1958. The News-Miner's main story of that day concerned the dismissal of the principal of the North Pole school. A rather lengthy article concluded on an inside page with the following:

Ray wasn't the first head teacher to be fired by the board. In October, 1957 Mrs. Betty Pitka also departed by a similar route.

With respect to this publication the trial judge made the following finding:

As to this publication of October 1958, the last paragraph can be taken only to mean that Mrs. Pitka was fired. It is the finding of the Court that the term was defamatory. When taken in the light of the article that preceded, this last paragraph—though the body of the article itself did not refer to Mrs. Pitka—the word "fired" and the phrase "similar route" connote in my mind more than the exercise by the School Board of its arbitrary right to dismiss its teachers. It connotes dissatisfaction with their professional competence and conduct. This is even a stronger connotation in the light of Mr. Ray's actual misconduct—a misconduct which strongly colored the word "fired" and the term "similar route". In addition, the use of the word must be viewed in the light of the public's being subjected, a year prior, to a dis-

15. See our discussion of this point in Fairbanks Publishing Co. v. Pitka, 376 P.2d 190, 193 (Alaska 1962).

16. Id. at 195.

17. Id.

torted and defamatory picture of Mrs. Pitka's departure from the North Pole School.

We do not agree that this article was defamatory as to appellee. The statement that Ray was fired and that appellee "departed by a similar route" means nothing more than that appellee had been fired as head teacher by the same school board a year earlier. We have held that this assertion is not defamatory in itself, and there is nothing in the article about Ray's trouble with the school board which would lead the reader of the article to understand the last sentence, which is the only part of the article referring to appellee, in a defamatory sense. We do not agree that the article has a connotation which would tend to discredit appellee or injure her reputation. Ray was fired, as the article indicates, because he had violated a law by inserting political propaganda in the school paper. To say, at the end of the article, that Ray was not the first teacher to be fired and that appellee had been fired also a year earlier is not even to remotely suggest that appellee was guilty of the same kind of alleged misconduct as Ray was accused of. Here the 1958 publication dealt with appellee only to say that she had been fired, or discharged, as head teacher of the North Pole school in October 1957. There was nothing defamatory in this.

Appellant also contends that the trial judge erred in finding that appellee was not a "public official" under the rule of New York Times Company v. Sullivan,[18] in finding that appellant had acted with actual malice in making the two publications complained of, and in assessing damages for loss of income without any evidentiary basis. We find it unnecessary to pass on these points, in view of our decision that the trial court erred in deciding that appellee was entitled to recover damages for defamation.

The judgment is reversed and the case remanded with directions to enter judgment for appellant.

18. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In this case the United States Supreme Court held that the first amendment to the Federal Constitution required a Federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct, unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.