110 N.J. Super. 43 (1970)
264 A.2d 262
STEVEN I. BROWNSTEIN, PLAINTIFF,
v.
FIBERONICS INDUSTRIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 15, 1970.
*46 Mr. James Greenberg, court appointed attorney for receiver Stanton D. Freeman. (Messrs. Greenberg, Shmerelson & Greenberg, attorneys).
Mr. Richard E. Beck, for defendants C & S Machinery Company, Inc., and Floyd A. New and E.W. Thompson, Jr., doing business as Greensboro Wood Products Company.
*47 WICK, J.S.C.
This is a proceeding to determine certain rights and liabilities for the receiver of an insolvent corporation.
Plaintiff, as a creditor of Fiberonics Industries, Inc., originally brought this action seeking the appointment of a receiver pursuant to N.J.S.A. 14A:14-2. The complaint was filed in this court on October 14, 1969 and a statutory receiver was appointed after a determination that Fiberonics was insolvent.
On December 17, 1969 the attorney for the receiver obtained an order to show cause why John Carpenter and Steven Skorupan, doing business as C & S Machinery Company, Inc., hereafter (C & S), and Floyd A. New and E.W. Thompson, doing business as Greensboro Wood Products Company, Inc., (hereafter Greensboro), should not have to account for certain assets that belong to the receivership.
Both C & S and Greensboro contested the order to show cause and the matter was tried in a plenary hearing.
At the hearing the following uncontroverted facts were established. On January 16, 1969 C & S, through its officers Carpenter and Skorupan, signed a contract with Fiberonics Industries, Inc. agreeing to sell certain enumerated machines and parts for $78,930. The terms of payment were that 20%, or $15,786, was payable at the signing of the contract and the balance 30 days after delivery of the completed order. Paragraph 5 of the agreement provides:
RETENTION OF TITLE. Title to above goods to remain in Seller until purchase price has been fully paid in cash. Buyer to sign notes, not in payment, but as evidence of obligation and all other papers necessary to place this contract on record, furnish such waivers, papers and security as requested, keep property fully insured; policies payable as interests appear and pay all taxes. It is expressly agreed said property shall in no event become a fixture or part of realty. If Buyer should default in any payment, attempt to sell, mortgage or remove property without Seller's written consent, or become insolvent or in any manner jeopardize Seller's interest *48 in property, then all payments become immediately due and payable and Seller or his agent without notice or process of law, may enter our premises, make any necessary openings in building and remove property, Buyer to pay all expenses necessary, by default, in which case Seller has the option to consider all payments made as rental or liquidated damages.
C & S completed 99% of its deliveries by May 31, 1969. Except for the $15,786 paid in January, no payments have been made to this date of the amount due under the contract.
On August 1, 1969 C & S filed a financing statement with the Secretary of State's office and the Monmouth County Clerk's office covering the machinery delivered under the contract.
On October 13, 1969 C & S repossessed all the machinery by paying the landlord $3600 of the rent due him and transporting them back to its Tennessee plant.
In February 1969, Greensboro, acting through Floyd A. New and E.W. Thompson, signed a contract with Fiberonics agreeing to sell one Rouse shaping lathe for $6,500, payable $1,300 at signing and the balance within 45 days after the delivery of the machine. A notation on the agreement indicates that the machine was delivered on March 13, 1969. Paragraph 5 of the agreement provides:
The Seller and Buyer agree that title to the machine in question is to remain with Seller until payment in full of the purchase price. In furtherance of this matter the parties agree to execute a UCC Financing Statement to be filed with the Secretary of State of New Jersey. Payment of preparation and filing of said financing statement is to be borne by Seller. Immediately upon payment in full Seller agrees to execute and deliver to Buyer the proper authority to cancel said financing statement.
On May 22, 1969 a financing statement was filed with the appropriate offices in this State. A total of $2,050 was paid on the machine. On October 13, 1969 Greensboro, in conjunction with C & S, paid the landlord $400 and removed its machine back to its North Carolina plant.
*49 The receiver seeks to have the C & S and Greensboro security interests set aside and the machines returned or, in the alternative, if the sellers' liens be found to be valid, then to recover Fiberonics' equity in the repossessed equipment.
Since the two liens have significant factual differences they will be examined separately, taking the C & S situation first.
N.J.S.A. 14A:14-14 provides:
(1) For the purposes of this chapter, a preference arises when
(a) a corporation which, while insolvent, and within four months of the commencement of a receivership action by or against it, transfers any property to or for the benefit of a creditor for or on account of an antecedent debt; and
(b) the effect of such transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class; and
(c) the creditor receiving or to be benefited by the transfer, or his agent acting with reference thereto, has, at the time when the transfer is made, reasonable cause to believe that the corporation is insolvent.

* * * * * * * *
(4) When a preference has arisen, the receiver may recover the property or, if it has been converted, its value, from any person who has received or converted such property, except a bona fide purchaser from or lienor of the corporation's transferee for a present fair consideration. Where, however, such bona fide purchaser or lienor has given less than such value, he shall nevertheless have a lien upon such property, but only to the extent of the consideration actually given by him. When a preference is by way of lien or security title, the Superior Court may on due notice order such lien or title to be preserved for the benefit of the insolvent corporation's estate, in which event the lien or title shall pass to the receiver.
This is a new provision in New Jersey law, having been enacted in 1968. The Commissioners' comments indicate that it was derived from section 60 of the Federal Bankruptcy Act, 11 U.S.C.A. § 96.
The meaning of the statute is clear that certain transfers may be set aside by a receiver if the prerequisites of N.J.S.A. 14A:14-14(1) are met. N.J.S.A. 12A:9-302(1) requires that a financing statement be filed to perfect *50 a security interest in this case. N.J.S.A. 12A:9-303(1) provides that the perfected security interest arose when the financing statement was filed on August 1, 1969. N.J.S.A. 14A:14-14(2) (a) states that
* * * a transfer of property other than real property shall be deemed to have been made or suffered at a time when it became so far perfected that no subsequent lien obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee; * * *.
Therefore, the filing of the financing statement of August 1, 1969 was a transfer within four months of the commencement of the receivership action. The security interest would have had the effect of giving C & S a greater percentage of its debt than other unsecured creditors. Since the security interest was given for the goods previously delivered, it was for an antecedent debt. The two remaining elements necessary to create a preference are in dispute. They are whether Fiberonics was insolvent on August 1, 1969 and whether C & S had reasonable cause to believe the corporation was insolvent.
From the proofs submited at trial the court finds that on August 1, 1969 Fiberonics was unable to pay its bills as they came due and could not obtain loans to improve its position. This means it was insolvent in the equity sense, as defined by N.J.S.A. 14A:14-1(f)(2).
The seller contends that this definition is not the one that should be used. It argues that N.J.S.A. 14A:14-14 is taken practically verbatim from section 60 of the Bankruptcy Act and therefore the federal definition should be used. 11 U.S.C.A. § 1(19) is similar to N.J.S.A. 14A:14-1(f)(1) and provides:
A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts; * * *.
*51 The seller argues that it is this definition which should be applied  the so-called balance sheet test  and not the equity definition.
Because N.J.S.A. 14A:14-14 is new, this court must attempt to decide which definition the Legislature had in mind when it passed the act. The comments to N.J.S.A. 14A:14-1(f) state that:
The cases decided under Chapter 14 of Title 14, however, make it clear that a corporation is insolvent for the purposes of that chapter when it is unable to pay its debts when they mature through its available assets or the honest use of credit. Paragraph (f) codifies the construction placed upon Chapter 14 by the courts.
Since the cases that were decided mainly dealt with the appointment of receivers, the Legislature must have intended the definition to apply to when a receiver should be appointed, as provided by N.J.S.A. 14A:14-2(2)(a). There is no comment or indication whether it also intended the definition to be applied to setting aside a preference.
The definition section, N.J.S.A. 14A:14-1, reads that, "As used in this chapter, and unless the context requires otherwise," the words have the meanings given. Therefore, in the absence of some showing that the Legislature did not intend N.J.S.A. 14A:14-1(f)(2) to apply to N.J.S.A. 14A:14-14, or some compelling reason why it should not, it will be assumed that it does apply.
N.J.S.A. 14:14-2 (now repealed) was a provision for setting aside certain transfers "when any corporation shall become insolvent" and was interpreted by the courts to mean insolvent in an equity sense and not a bankruptcy sense. Schwartz v. Maguire, 131 N.J. Eq. 578 (E. & A. 1942). Since New Jersey has traditionally so defined insolvency in allowing a receiver to set aside certain transfers and nothing to the contrary appears in the new statute, no injustice is done by applying the equitable definition rather than that used in the Bankruptcy Act.
*52 The Court accordingly rules that Fiberonics was insolvent on or before August 1, 1969 as the word is used in N.J.S.A. 14A:14-14(1)(a).
The final remaining issue is a factual one as to whether C & S had reasonable cause to believe Fiberonics was insolvent on August 1, 1969 as required by N.J.S.A. 14A:14-14(1) (c). The court finds that it did on the following facts.
The Agreement provided that C & S be paid in full within 30 days after delivery, which would have been June 30, 1969 and it was not. Financing was attempted through the Industrial Valley Bank and Trust Company of Jenkintown, Pennsylvania, and the National Acceptance Corporation of Chicago, Illinois. In both cases financing was not available to the corporation without personal guarantees. On July 24, 1969 the officers of C & S were informed by the president of Fiberonics and its attorney that they could not sign a statement that the corporation was solvent because it was not then solvent.
C & S claims it relied on representations made by the officers of Fiberonics that it had plenty of orders, that a public stock issue of $750,000 was contemplated, and that a merger was soon to be culminated. It also relied on a balance sheet dated May 20, 1969, which showed that the company had $128,000 allocated to stockholders' equity. However, the balance sheet also showed current liabilities of $134,584.56 against current assets of $70,639.58, with machinery accounting for $209,084.29 of the remaining assets of $219,414.29.
While the corporation officials may have radiated optimism, all the outward signs showed that the corporation on August 1, 1969 was not healthy and in fact had current liabilities of $64,000 that it could not pay without liquidating the machines on which the business depended. The court finds that there was more than reasonable cause for C & S to believe Fiberonics was insolvent on August 1, 1969.
Accordingly, the receiver, pursuant to N.J.S.A. 14A:14-14(4), may recover the property from C & S and *53 sell it to pay the creditors of Fiberonics. C & S is entitled to share pro rata in the distribution by the receiver to the extent of its obligations as set out below. C & S is owed $63,144 remaining on the machinery. Since on October 13, 1969 it had the right, by paragraph 5 of its agreement and N.J.S.A. 12A:9-503 and 504, to repossess the goods and add the expenses thereby incurred to the debt, those expenses are properly chargeable against Fiberonics and the receivership. The Court determines these allowable expenses to be $2707.94 for transportation, $1,348 for labor and equipment necessary for repossession, and $2,491 for legal fees. The other expenditures made by C & S are not covered by its agreement or N.J.S.A. 12A:9-504(1)(a) so are not allowable.
Greensboro perfected its lien in May 1969, over four months from the date of this action, so its transfer may not be set aside. However, Greensboro must comply with the provisions of the Uniform Commercial Code. N.J.S.A. 12A:9-503 permits a secured party to take possession of the collateral (as Greensboro did). While it is possible for a secured party to retain the collateral (as Greensboro has), N.J.S.A. 12A:9-505(2), which requires that the debtor be given notice must be fulfilled. Since this was not done, the receiver will now be given the option of allowing Greensboro to keep the machine in total satisfaction of its debt or of ordering a sale pursuant to N.J.S.A. 12A:9-504. If the receiver elects to have the sale, Greensboro will be entitled to the $4,450 owed plus 9% interest from March 13, 1969 to October 13, 1969, plus $775 in legal fees, telephone and transportation expenses. Since the debtor will be entitled to about $5,460 upon the sale of a used machine that is allegedly damaged and cost only $6,500 new, the receiver will probably find it to his advantage not to elect a sale, but this decision is left to him.
Since the landlord had a lien on the machinery by reason of N.J.S.A. 2A:44-166 that was superior to the security interests he was enforcing by notice of a sale, the *54 payment of $3,600 and $400, respectively, by C & S and Greensboro to discharge this lien advances them to the landlord's position under the principle of subrogation. Brown v. Carpenter, 109 N.J. Eq. 208 (E. & A. 1931), First National Bank of Freehold v. Thompson, 61 N.J. Eq. 188, 193 (Ch. 1901); 83 C.J.S. Subrogation § 36 (1953).
Judgment will be entered according to this decision, the receiver's costs to be borne by C & S and no costs allowed to Greensboro.