Jack MORAN, Appellant,

v.

Rex F. HOLMAN, Appellee.

No. 1650.

Supreme Court of Alaska.

Oct. 8, 1973.

Ernest Z. Rehbock, Anchorage, for appellant.

David Wolf, Alaska Legal Services, Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

BOOCHEVER, Justice.

We are here confronted with the question of whether, under the provisions of the Uniform Commercial Code (U.C.C.), a debt is discharged wen the secured party, after the debtor's default in payments, repossessed a truck, used it for purposes other than its preservation, and did not initiate suit on the debt for a period of approximately four months.

In November of 1967, Rex Holman borrowed $2,050 from Jack Moran to finance the purchase of a used pickup truck. This debt was consolidated with certain prior obligations, and Holman executed a promissory note in the principal amount of

$2,750, with interest at 8 percent per annum. Under the terms of this note, Holman agreed to repay the loan in monthly $100 installments commencing in February of 1968. A security agreement was also executed by Holman in favor of Moran covering the pickup truck. Holman made one $100 payment on the debt and defaulted on the subsequent installments.

On June 21, 1969, Moran appeared at Holman's residence and demanded possession of the collateral. Holman refused to surrender the truck, and Moran left.[1] Later that same day, Holman decided to give up the truck, and so he drove it to Moran's home and left it there. He gave the keys to Moran.

On October 16, 1969, Moran sued Holman in the district court to recover on the debt secured by the pickup truck. The court found that "Moran, or persons authorized by him, used the truck for purposes not related to its preservation," and noted that Moran had waited nearly four months after repossession before initiating this action. The district court concluded that under the Alaska provisions of the U.C.C., Moran had retained the collateral in satisfaction of the debt; and that, moreover, the retention of the collateral amounted to an accord and satisfaction of the debt. The court also held that by taking possession of the collateral, Moran was barred from suing on the debt. On appeal, the superior court affirmed the district court's decision. Moran appeals to this court.

As his first assignment of error, Moran contends that certain of the district court's findings of fact were clearly erroneous. Civil Rule 52(a) states in part that:

> In all actions tried upon the facts without a jury or with an advisory jury . . . . [f]indings of fact shall not be set aside unless *clearly erroneous,* and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. (Emphasis added.)

Before this court will reverse a finding of fact as clearly erroneous "[w]e must be convinced, in a definite and firm way, that a mistake has been committed."[2]

Examination of the record has left us satisfied that the findings of fact of the district court must stand. Admittedly, there were conflicts in the testimony presented by the opposing sides in this litigation, but Moran has failed to convince us that the trial court's findings were clearly erroneous.

The district court observed that after repossession but before the action was initiated Moran and others authorized by him used the truck for purposes inconsistent with its preservation, and that Moran had failed to sell or give notice of his intention to retain the collateral in satisfaction of the debt. The trial court held that under the U.C.C.,[3] the repossession and use of the collateral by Moran discharged Holman's debt. The superior court affirmed, and Moran appeals from that decision.

---

1. Moran, as seller, had also entered into a real estate contract with Holman for the sale of a house. The contract was in arrears, and Holman had made arrangements to resell the house to the City of Fairbanks for a sum substantially in excess of the amount owed Moran. Holman told Moran of the sale and of his intent to pay in full the debts for both the truck and the property from the proceeds of the prospective sale of the house. When Moran demanded possession of the truck Holman asked him to wait until he received payment for the property from the city, but Moran refused.

2. Alaska Foods, Inc. v. American Manufacturer's Mut. Ins. Co., 482 P.2d 842, 848 (Alaska 1971). *See also* Palfy v. Rice, 473 P.2d 606, 609 (Alaska 1970); State v. Phillips, 470 P.2d 266, 268 (Alaska 1970); Paskvan v. Mesich, 455 P.2d 229 (Alaska 1969); Alaska Placer Co. v. Lee, 455 P.2d 218, 224 (Alaska 1969); Ayers v. Day & Night Fuel Co., 451 P.2d 579, 582 (Alaska 1969); Fairbanks Publishing Co. v. Pitka, 445 P.2d 685, 687 (Alaska 1968); Monsma v. Williams, 385 P.2d 107, 110 (Alaska 1963).

3. AS 45.05.002 et seq.

A secured party's rights and remedies following the debtor's default are governed by AS 45.05.782–45.05.794, Part 5 of Article 9 of the U.C.C. as enacted in Alaska.[4] AS 45.05.782(a)[5] specifies that, except as limited by the specific provisions of AS 45.05.782(c), a secured party may enforce such rights as may be provided in the security agreement. He may also reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure.

AS 45.05.786 provides that the secured party may take possession of the collateral on default.[6] He may sell, lease, or otherwise dispose of the chattel in accordance with provisions set forth in AS 45.05.788, U.C.C. § 9–504.

AS 45.05.790(b)[7] sets forth an additional right of a secured party who, like Moran, has been paid less than 60 percent of the loan and is in possession of the collateral. He may retain the collateral in satisfaction of the debt.[8] In that event, he is required to furnish written notice to the debtor. If the debtor objects within 30 days after receipt of the notice, the secured party must dispose of the chattel by a means specified in AS 45.05.788, U.C.C. § 9–504. In the absence of such written objection, he may retain the collateral in satisfaction of the debtor's obligation.

Moran gave no such written notice to Holman nor did he attempt to sell or dispose of the property. Some four months after taking possession of the truck, during which time he used it for his own purposes, he brought suit against Holman for the full amount of the debt then due plus interest. The case was not tried until July

---

4. The code assigns no definition to "default" but instead leaves that to the determination of the parties. Under the Moran-Holman security agreement, "default" was defined to mean:
   Any failure to make payment, when due, of any of the amounts required to be paid in item 10; failure of Mortgagor(s) to meet any of the terms and conditions as to such Mortgagor(s) in paragraph E; proceedings in bankruptcy, receivership or insolvency against Mortgagor(s); misrepresentation by Mortgagor(s) of any material fact.

5. AS 45.05.782(a), U.C.C. § 9–501(1), states that:
   If a debtor is in default under a security agreement, a secured party has the rights and remedies provided in §§ 782–794 of this chapter and, except as limited by (c) of this section, those provided in the security agreement. He may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents, the secured party may proceed either as to the documents or as to the goods covered by the documents. A secured party in possession has the rights, remedies, and duties provided in § 728 of this chapter. The rights and remedies referred to in this subsection are cumulative.

6. U.C.C. § 9–503. Weaver v. O'Meara Motor Co., 452 P.2d 87, 92–93 (Alaska 1969); See also Stanley v. Fabricators, Inc., 459 P.2d 467, 474 n. 15 (Alaska 1969); Hollembaek v. Alaska Rural Rehabilitation Corp., 447 P.2d 67, 71 (Alaska 1968).

7. AS 45.05.790(b), U.C.C. 9–505(2) states:
   (b) In another case involving consumer goods or any other collateral, a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of the proposal shall be sent to the debtor and, except in the case of consumer goods, to any other secured party who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or is known by the secured party in possession to have a security interest in it. If the debtor or other person entitled to receive notification objects in writing within 30 days from the receipt of the notification or if any other secured party objects in writing within 30 days after the secured party obtains possession, the secured party must dispose of the collateral under § 788 of this chapter. In the absence of this written objection, the secured party may retain the collateral in satisfaction of the debtor's obligation.

8. If, however, the collateral is "consumer goods," defined in AS 45.05.706(1) U.C.C. § 9–109(1), and 60 percent of the loan or price has been paid, then the secured creditor is precluded from retaining the collateral, and must sell it within 90 days after repossession. AS 45.05.790(a), U.C.C. § 9–505(1). It does not appear, nor did the parties contend, that in this case 60 percent of the loan or price had been paid. It is unclear from the record whether the truck was "consumer goods" as defined by the code.

30, 1971, more than 25 months after Moran had taken possession of the vehicle. At no time did he offer to return the truck or attempt to sell it.

The facts are closely analogous to those of Bradford v. Lindsey Chevrolet Co.[9] where it was held:

> The action of the holder in legally repossessing the security under a conditional sale contract, the retention of the same without sale and without excuse for not selling, and without demand for payment of the contract, for a period of approximately 50 days before suit on the contract and for over 16 months from the time of filing suit to the time of trial, constituted a rescission and satisfaction of the contract and no recovery could be had thereon.[10]

■ The requirement of notice to the debtor by a secured party proposing to retain the chattel in satisfaction of the obligation is obviously for the benefit of the debtor. A secured party who retains the chattel for an excessive period of time without disposing of it as provided for by the U.C.C. and who uses the property as his own during that period should not be permitted to profit by his failure to furnish the requisite notice. As stated in 4 R. Anderson, Uniform Commercial Code 9–505:5, at 632 (2d ed. 1971):

> The creditor's failure to give notice of intention to retain the collateral in discharge of the debt does not prevent the debtor from showing that the collateral was in fact retained by the creditor and on the basis of such fact he may claim that he is discharged from further liability. The giving of notice protects the

creditor from a subsequent claim that he should have sold the collateral. (Footnote omitted.)

■ A motor vehicle such as the truck in question is a depreciating asset.[11] The district court found that the parties here were unsophisticated with reference to the myriad and involved provisions of the U.C.C. In such a situation the secured party who has retaken possession of the collateral should not be permitted to wait an inordinate period, utilizing the vehicle in the meantime, and then elect to sue for the full amount of the debt.[12]

We are further influenced in so construing the statute by the consideration that a debtor who has defaulted on his obligation so that the collateral has been repossessed is often in a particularly disadvantageous position to sue the creditor to compel disposition of the collateral or to seek damages for its misuse. Usually, due to his poor financial position, the debtor has scant prospect of obtaining an attorney, and the amount involved is often too small to justify legal services. The possible remedies are thus illusory in most cases. On the other hand no substantial burden is imposed upon the creditor by requiring him to take action within a reasonable time and to abstain from making inconsistent use of the repossessed collateral.

■ Our holding does not imply that a secured party under proper circumstances may not retain possession of collateral and still sue on the obligation. When, however, he retains collateral which depreciates in value, such as a motor vehicle, for an unduly long period of time and uses the vehicle as his own,[13] we hold that the

9. 117 Ga.App. 781, 161 S.E.2d 904 (1968).

10. Id. at 906.

11. Valley National Bank of Long Island v. Babylon Chrysler-Plymouth, Inc., 53 Misc.2d 1029, 280 N.Y.S.2d 786, 789 (Sup.Ct.1967), aff'd, 28 A.D.2d 1092, 284 N.Y.S.2d 849 (1967). The district court found that at the time the truck was repossessed by Moran, its resale value would have been close to the amount of the debt.

12. Northern Financial Corp. v. Chatwood Coffee Shop, Inc., 4 U.C.C. 674 (N.Y.Sup. Ct.1967) ; Harris v. Bower, 266 Md. 579, 295 A.2d 870, 874 (Md.1972) ; Brownstein v. Fiberonics Industries, Inc., 110 N.J.Super. 43, 264 A.2d 262, 268 (1970).

13. AS 45.05.728(d), U.C.C. § 9–207(4) provides:
> A secured party may use or operate the collateral (1) to preserve the collateral or its value; (2) under the order of a court

debtor may validly claim that his obligation has been satisfied. To rule otherwise would permit overreaching and inequitable abuses by some secured parties.

In view of our holding, we do not reach the question of whether an accord and satisfaction was effected by the repossession.

Affirmed.

RABINOWITZ, Chief Justice, with whom FITZGERALD, Justice, joins (dissenting).

I am unable to agree with the court's holding that if the secured party after repossession of a depreciating asset retains possession of the collateral, and uses the collateral as his own for an "unduly long" period of time, the debtor may elect to treat the debt as discharged.

On default the secured party may, unless otherwise agreed, take possession of the collateral, if he does so without breach of the peace. U.C.C. § 9–503, AS 45.05.786; cf., Weaver v. O'Meara Motor Co., 452 P. 2d 87 (Alaska 1969). After repossession, the secured party may exercise those remedies which are established under the default provisions of Article 9 of the Code as enacted in Alaska, AS 45.05.782–45.05.794, and in addition may "reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available

judicial procedure." U.C.C. § 9–501(1), AS 45.05.782(a). The secured party need not make an election among these remedies, and may pursue them simultaneously.[1]

Except when the collateral is "consumer goods,"[2] and the debtor has paid 60% of the cash price or 60% of the loan, the Code imposes no time limit upon the secured party in possession of the collateral to sell the collateral or to give the debtor written notice of his intention to retain the collateral in satisfaction of the debt.[3] The Code, however, does require that the "method, manner, time, place, and terms" of any disposition of the collateral by the secured party be commercially reasonable. U.C.C. § 9–504(3), AS 45.05.788(c).

The Code does not require the secured party to sell the collateral after repossession. See, U.C.C. § 9–504(1), AS 405.05.788(a). However, if the secured party does not elect to retain the collateral in satisfaction of the obligation,[4] the requirement that he sell the collateral within a commercially reasonable time must apply. The commercial reasonableness of the time of the sale must be judged from the date of repossession in order for that requirement to be meaningful. Surely the secured party should not be permitted to claim that the commercial reasonableness of the time of the sale should be judged from the time he decides to dispose of the collateral rath-

of appropriate jurisdiction; or (3) except in the case of consumer goods, in the manner and to the extent provided in the security agreement.

The act does not otherwise permit use for the personal purposes of the secured party.

1. In re Adrian Research and Chemical Co., 269 F.2d 734, 737 (3d Cir. 1959). *Accord,* Peoples National Bank of Washington v. Peterson, 7 Wash.App. 196, 498 P.2d 884 (1972). *See also,* Clark, Default, Repossession, Foreclosure and Deficiency: A Journey to the Underworld and a Proposed Salvation, 51 Ore.L.Rev. 302, 317 (1972); Article 9 of the Uniform Commercial Code: Election of Remedies on Defendant, 1959 Duke L.J. 640.

2. "Consumer goods" is defined in AS 45.05.-706(1), U.C.C. § 9–109(1), as goods which are "used or bought for use primarily for personal, family, or household purposes . . . ."

3. When 60% of the price or the loan has been paid, and the collateral is consumer goods, the secured party *must* sell the collateral within 90 days after repossesion. U.C.C. § 9–505(1), AS 45.05.790(a). It does not appear, nor do the parties contend, that in this case 60% of the loan or price had been paid. It is also unclear from the record whether the truck was "consumer goods" as defined by the Code.

4. Under § 9–505(2), AS 45.05.790(b), the secured party may make a written proposal to the debtor that the secured party retain the collateral in satisfaction of the debt. If the debtor, or any other person entitled to notification, does not object, the secured party may retain the collateral in satisfaction of the debtor's obligation.

er than to retain it in satisfaction of the debt.[5]

The debtor's remedy for the secured party's failure to comply with the default provisions of Article 9 is set out in Section 9–507(1), AS 45.05.794(a). That section provides in part:

> If it is established that the secured party is not proceeding in accordance with §§ 782–794 of this chapter [the default provisions of Article 9], *disposition may be ordered* or restrained on appropriate terms and conditions. (Emphasis added.)

Thus, if the secured party does not elect to retain the collateral in satisfaction of the debt, and does not dispose of the collateral within a commercially reasonable period, the debtor's remedy is to compel disposition of the collateral.

Additionally, the Code requires that the secured party use reasonable care in the custody and preservation of the collateral after repossession. U.C.C. § 9–501(2), § 9–207(1); AS 45.05.782(b), 45.05.728(a). The Code provides that in the event the secured party fails to exercise reasonable care in the custody and preservation of the collateral, the secured party is liable for any resulting loss. U.C.C. § 9–207(3), AS 45.05.728(c).

By holding that the debtor may treat the debt as discharged when the secured party fails to dispose of the collateral and uses it as his own, the majority ignores the specific remedies which the Code provides. Moran may be liable to Holman for losses caused by his failure to use reasonable care in the custody and preservation of the collateral. Holman might also have sought to compel Moran to dispose of the pickup truck if Moran failed to sell it within a commercially reasonable time. But, I find no authority in the Code for the conclusion that Holman may consider the debt discharged because Moran used the collateral in a manner inconsistent with its preservation, and did not sell the collateral during the four month period before he brought suit.[6] Although the secured party may be liable to the debtor for failure to exercise care in the custody and preservation of the collateral, and further may be compelled to dispose of the collateral if the secured party fails to sell within a commercially reasonable period of time, the Code does not permit the debtor to treat the debt as extinguished.[7]

A creditor may reasonably wish to defer sale of the collateral in order to secure the highest price and limit the amount of the deficiency for which the debtor will be liable. However, now that the creditor may suffer extinction of the debt by waiting for a favorable market, the creditor will likely sell as quickly as possible after repossession in order to preserve his right to proceed against the debtor for a deficiency judgment. I am concerned that by creating an incentive for the quick disposition of collateral, onerous deficiency judgments will be encouraged. As Professor Gilmore has observed:

> Sad experience has taught that a power of sale, coupled with a right to a defi-

5. The draftsmen of the Code noted in Official Comment 6, U.C.C. § 9–504 that

> . . . a secured party who without proceeding under Section 9–505(2) held collateral a long time without disposing of it, thus running up large storage charges against the debtor, where no reason existed for not making a prompt sale, might well be found not to have acted in a "commercially reasonable" manner.

6. I simply note that the result reached in Bradford v. Lindsey Chevrolet Co., Inc., 117 Ga.App. 781, 161 S.E.2d 904 (1968), which the majority cites as authority for its holding, appears to have been based upon a theory of accord and satisfaction, rather than upon the remedies established under the Code.

7. By this I do not intend to suggest that the debtor is precluded from invoking such non-Code remedies as accord and satisfaction or conversion. U.C.C. § 1–103, AS 45.05.006, provides:

> Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause, supplement its provisions.

ciency judgment, can be harder on the debtor than strict foreclosure ever was. The surplus to be returned to the debtor after sale is a glittering mirage; the deficiency judgment is a given reality. Furthermore the person who buys at the sale today, nine times out of ten, is not our hero, the good faith purchaser for value, but the holder of the security interest who pays not in cash but by a credit against the debt.[8]

Finally, since the record is devoid of any evidence which would support the district court's finding of an accord and satisfaction, and since I do not think that Moran's conduct should result in extinction of the debt, I would reverse and remand for a new trial.

8. Gilmore, Security Interests in Personal Property, 1191 (1965). *See also*, Clark, Default, Repossession, Foreclosure and Deficien-cy: A Journey to the Underworld and a Proposed Salvation, 51 Ore.L.Rev. 302 (1972).