**In re Clayton G. BOYD, Debtor.**

**Bankruptcy No. 486–41194.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

May 5, 1987.[1]

---

1. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.

S. Gary Werley, Bishop, Payne, Lamsens & Brown, Fort Worth, Tex., for Boyd.

David R. Casey, Hurst, Tex., for BNT.

## MEMORANDUM OF OPINION CONCERNING MOTION OF THE BANK OF NORTH TEXAS

JOHN C. AKARD, Bankruptcy Judge.

On June 11, 1986, Clayton G. Boyd (Boyd) filed for protection under Chapter 13 of the Bankruptcy Code. On July 16, 1986, the Bank of North Texas (BNT) filed a Motion to Lift Stay on a 1984 Chevrolet Suburban, a 1985 Webbcraft boat, motor and trailer, and a Bowie Hydro-mulcher, all of which were given as security respectively on three notes held by the Bank. The Debtor responded that the payments on the 1984 Chevrolet Suburban were current and that the vehicle was necessary for an effective Chapter 13 reorganization. He admitted that he executed a promissory note and granted a security interest in the boat, motor and trailer, but denied he owed the Bank any money on it. He denied that he ever gave a security interest in the Hydro-mulcher, stating that it was owned by Greenleaf Landscape Company, not by Clayton Boyd. An Order to Lift Stay was signed by the Court which lifted the stay with reference to the boat, motor and trailer. That Order was entered on September 9, 1986, but the Order set "all remaining issued (sic) presented by Movant in its Motion to Lift Stay" for October 17, 1986 at 9:00 a.m.

On October 17, the Court heard testimony with respect to the three notes and the collateral securing them.

*Note 1*

■ On December 27, 1983, Boyd executed a promissory note in the amount of $20,058.72 to BNT along with a Security Agreement on a 1984 Chevrolet Suburban, Serial No. 1G8EK16L3EF117044. The testimony at trial and the documentary evidence produced showed no evidence that a lien was ever properly perfected on the Texas Certificate of Title, although the Debtor did not contest that the Bank held a lien on the Chevrolet. The testimony was that the Chevrolet was necessary for an effective Chapter 13 reorganization and that the Debtor was current on the note secured by the vehicle. Therefore, BNT's Motion to Lift Stay on the Chevrolet is denied without prejudice.

*Note 2*

■ On December 5, 1985, Boyd executed a promissory note to BNT in the sum of $2,418.69. At the same time, Boyd executed a Security Agreement in favor of BNT granting it a security interest in a Bowie Hydro-mulcher, Serial No. 80–877–414. BNT claims a lien on the Hydro-mulcher, but produced no Certificate of Title to it. Boyd alleged that the note on the Hydro-mulcher was not a personal note but a corporate note. BNT did not prove it had a properly perfected lien on the Hydro-mulcher for any obligations of this Debtor. Therefore, the BNT Motion to Lift Stay on the Hydro-mulcher is denied with prejudice.

*Note 3*

On April 26, 1985, Boyd executed a promissory note to BNT in the amount of $25,826.40. At the same time Boyd granted BNT a security interest in a 1985 Webbcraft boat, Serial No. WBB04478B58519; a motor, Serial No. A389919; and a 1984 boat trailer CC186M Model 3000, Serial No. S385228. Boyd defaulted on the note in January, 1986, and BNT repossessed the collateral in mid-April. BNT's Lift Stay Motion was filed some three months after BNT took possession of the boat. The Bank had not sold the boat at the time of the hearing.

The testimony at the hearing indicated that on July 4, 1986, Boyd, accompanied by his wife and her mother were out for a drive when they saw their boat going down the road with people in the car pulling it dressed to go on the lake. When the parties pulling the boat stopped at a convenience store, the Boyds also stopped. Mrs. Boyd and her mother went into the convenience store and visited with persons who had occupied the car in question about the nice weather and what an excellent day it was for an outing on the lake. At trial, Mrs. Boyd identified one of the people in possession of the boat as Thomas Sanders, an employee of the Bank. Her mother also identified Sanders. They testified they identified the boat because they recognized the license plate and additional steps added to the boat. Additionally, the boat had a distinctive propeller.

Mr. Sanders testified that he was in Springtown, Texas on that date and would have been fired if he had used the collateral.

The issue before the Court is if the Court finds that the Bank used the collateral, was Boyd discharged on the note by the impairment of the collateral pursuant to TEX. BUS. & COM.CODE ANN. § 3.606. Alternatively, if the Bank used the boat, did BNT elect by such use to obtain the collateral for its personal use and in satisfaction of the obligation pursuant to TEX.BUS. & COM.CODE ANN. § 9.505?

■ On the evidence presented, the Court finds that the Bank did take and use the collateral for its own use. However, the collateral impairment defense under § 3–606 of the U.C.C. is available only to parties who are in a position of surety with respect to the instrument. Thus, the defense is not available to the maker of a note. *United States v. Vahlco Corp.*, 720 F.2d 885 (5th Cir.1983). Therefore, the Court looks only to whether by its use of the collateral and failure to sell it within a reasonable time BNT has elected to take the collateral in satisfaction of Boyd's obligation.

■ The facts and testimony show that the Bank had been in possession of the

boat for three months prior to moving the Court to lift the Stay, that the Bank used the collateral during the time it held the collateral in its possession, and that no commercially reasonable disposition of the repossessed boat, motor or trailer had taken place at the time BNT converted it to its own use. BNT, which repossessed the boat, motor and trailer in mid-April, unduly delayed foreclosure proceedings. BNT had two months to foreclose on its repossessed collateral prior to the filing of Boyd's bankruptcy petition. Therefore, this Court must find that BNT took the boat, motor and trailer, in full satisfaction of Boyd's debt. To find otherwise would allow BNT a double recovery. *Tackett v. Mid-Continent Refrigerator Co.*, 579 S.W.2d 545 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.).

Order accordingly.