In re Ralph W. CROSBY;  Beverly
F. Crosby, Debtors.

Ralph W. CROSBY;  Beverly
F. Crosby, Appellants,

v.

Douglas REED;  Gayle Reed, Appellees.

BAP No. EC–94–1566–RJC.
Bankruptcy No. 91–21031–A–7.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Nov. 16, 1994.

Decided Dec. 22, 1994.

Helga A. White, Sacramento, CA, for appellants.

Dennis K. Cowan, Redding, CA, for appellees.

Before RUSSELL, JONES and CARLSON[1], Bankruptcy Judges.

## OPINION

RUSSELL, Chief Judge:

The debtors filed an objection to an amended proof of claim filed by a secured party after the secured party foreclosed on the collateral eight months after repossession. The debtors assert, in an effort to bar the secured party from obtaining a deficiency judgment, that the secured party elected to retain the collateral in satisfaction of the obligation and that the sale was not conducted in a "commercially reasonable" manner after an eight month delay. The bankruptcy court overruled the objection. The debtors appeal. We AFFIRM.

## I. FACTS

On July 14, 1989, the appellees, Douglas and Gayle Reed ("Reeds") sold the Palomino Room, a bar/restaurant well known in Red Bluff, California to the debtors/appellants, Ralph and Beverly Crosby ("Crosbys") and third parties Joseph Dean and Brenda Eitzen ("Eitzens") for $351,000.[2]

The Reeds retained the master lease for the premises and granted a sub-lease to the Crosbys and Eitzens. Pursuant to the sale, the Crosbys and Eitzens paid $116,000 in cash and signed two promissory notes for the remaining $235,000. A security agreement was also executed, securing both notes with "[a]ll stock in trade and goodwill of ... the Palomino Room ... and the ... fixtures and equipment[.]"

The Crosbys and Eitzens assigned their interest in the Palomino Room to the Crosby/Eitzen California Partnership, d.b.a. Palomino Room ("partnership"). The partnership defaulted on the notes and in May 1990 the Reeds obtained a state court judgment against the partnership, the Crosbys and the Eitzens for $264,359.75.[3]

In December 1990, the Reeds were granted relief from the automatic stay to foreclose on the collateral securing their judgment. Prior to vacating the premises, the existing inventory was valued at $11,916.15.

The Reeds reopened and began operating the restaurant in mid-December, 1990, and had an appraisal conducted in January 1991. The appraised value of the fixtures and equipment was $40,290.55.

In August 1991, the Reeds published a notice of a public auction, in which the stock in trade, the fixtures and equipment of the Palomino Room were to be sold pursuant to the security agreement. The sale was conducted by a licensed auctioneer. The Reeds were the only bidders at the sale, and purchased all of the assets with a credit bid of $40,000.

In October 1993, the Crosbys and the Chapter 7 trustee filed objections to the Reeds' amended claim for the deficiency. The bankruptcy court held a hearing on the objection.

---

1. Honorable Thomas E. Carlson, Chief Bankruptcy Judge for the Northern District of California, sitting by designation.

2. The sales price was allocated as follows:

| | |
|---|---|
| Fixtures and Equipment | $ 50,000 |
| Goodwill | 5,000 |
| 3 year covenant not to complete | 205,000 |
| Leasehold interest | 50,000 |
| Liquor License | 25,000 |
| Inventory | $16,000 |
| | $351,000 |

3. The partnership filed a Chapter 11 petition on June 6, 1990, followed by the filing of a Chapter 7 petition by the Eitzens on August 7, 1990, and the filing of a Chapter 11 petition by the Crosbys on February 12, 1991. The Crosbys' Chapter 11 case was converted to a Chapter 7 case on June 18, 1991. This appeal arises only from the Crosbys' objection to the Reeds' claim.

The bankruptcy court ruled in favor of the Reeds, overruled the objection and valued the Reeds' claim at $231,315.53. The bankruptcy court also noted that if there were sufficient assets to pay all claims in full, then the Reeds would also be entitled to interest on the principal from February 1991. The Crosbys timely filed a notice of appeal.

## II. ISSUE

A. Whether a secured party who uses its collateral after repossession, but prior to a public sale, makes an implied election to retain its collateral in full satisfaction of the debtors' obligation, thereby waiving any deficiency recovery against a defaulting debtor.

B. Whether the sale of a secured creditor's collateral is commercially reasonable when the sale was conducted eight months after repossession.

## III. STANDARD OF REVIEW

■ A bankruptcy court's interpretation of state law is reviewed under the same *de novo* standard as a question of federal law. *Whitcombe v. Stevedoring Services of America,* 2 F.3d 312, 316 (9th Cir.1993) (citing *Salve Regina College v. Russell,* 499 U.S. 225, 231–32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)); *In re Breen,* 123 B.R. 357, 359 (9th Cir. BAP 1991).

■ Classification of collateral under the Uniform Commercial Code is a question of law reviewed *de novo. In re Newman,* 993 F.2d 90, 93 (5th Cir.1993). A finding by the bankruptcy court that a sale is "commercially reasonable" is a finding of fact and will be upheld by a reviewing court unless it is clearly erroneous. *Ingersoll–Rand Fin. Corp. v. Miller Mining Co., Inc.,* 817 F.2d 1424, 1427 (9th Cir.1987).

## IV. DISCUSSION

A. *Election to Retain Collateral by Secured Party*

■ California Commercial Code § 9504 governs the rights of a secured party to dispose of its collateral after default. Section 9504(1) provides that "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." Cal. Comm.Code § 9504(1) (West 1994 Supp.).

■ Subsection (2) of § 9504 requires the secured party, upon disposition of the collateral, to account to the debtor for any surplus and, unless otherwise agreed, the debtor is liable for any deficiency. Section 9505(2) is the one exception to the general rules of disposition set forth in § 9504.

Section 9505(2) provides, in relevant part:

[A] secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. *Written notice of such proposal shall be sent to the debtor* if he has not signed after default a statement renouncing or modifying his rights under this subsection.... If the secured party receives objection in writing from a person entitled to receive notification within 21 days after the notice was sent, the secured party must dispose of the collateral under Section 9504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

Cal.Comm.Code § 9505(2) (West 1990) (emphasis added).

The Crosbys admit in their opening brief that "there is no specific letter from the Reeds to the Crosbys stating the Reeds' intention to retain the collateral in satisfaction of the debt...." Rather, they assert that "other written and verbal communication to the public ... constitute notice to the Crosby[s] that they (the Reeds) intend or elect to keep the collateral." [4]

In order to determine whether there was an election to retain the collateral based on the "other written and verbal communication[s]," we must look to state law to determine whether a California court would con-

---

4. The "other written and verbal communication to the public" include a Red Bluff Daily Newspaper article dated December 13, 1990, claiming the Reeds were "back at the helm"; alleged word of mouth advertising to customers by the Reeds; and an application for a liquor license which was required under state law to be displayed for 30 days.

clude that the requirements of § 9505(2) were satisfied. In interpreting California's Commercial Code, the Ninth Circuit Court of Appeals has stated:

> When interpreting state law, a federal court is bound by the decision of the highest state court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. However, in the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts.

*In re Kirkland*, 915 F.2d 1236, 1238–39 (9th Cir.1990) (citations omitted).

We are unaware of any California Supreme Court opinion on this exact issue. However, in other jurisdictions, there exist three points of view on whether a secured party should be held to have retained collateral in satisfaction of a debtor's obligation, even though the security holder never made a proposal in writing.

Under the first viewpoint, "[a]n election to take the collateral in full satisfaction will not be implied; it must be made by written notice to the debtor." *Chrysler Credit Corp. v. Mitchell*, 94 A.D.2d 971, 464 N.Y.S.2d 96, 97 (1983).

While both the second and third viewpoints allow implied elections to retain collateral in satisfaction of indebtedness, one is based on duration and the other on the secured party's intent. The second viewpoint holds that an election may be implied from an unreasonably prolonged retention of collateral by the secured party. *Service Chevrolet, Inc. v. Sparks*, 99 Wash.2d 199, 660 P.2d 760, 763 (1983) ("There must, therefore, be a *'reasonable' limit* to the length of time a secured party is permitted to hold collateral before it is deemed to have exercised its right to retain that collateral in satisfaction of the obligation.")

The third viewpoint allows an implied election, but only if it is shown that the secured party manifested an intent to accept the collateral in satisfaction of the obligation. *In re Deephouse Equip. Co., Inc.*, 38 B.R. 400, 404–05 (Bankr.D.Conn.1984). The debtor bears the burden of showing that the secured party manifested an intent to retain the collateral in satisfaction of the obligation under the third viewpoint. *Nelson v. Armstrong*, 99 Idaho 422, 582 P.2d 1100, 1108 (1978).

Regardless of which view the California Supreme Court would choose, we do not believe the Crosbys would succeed under any of the viewpoints. First, it is clear that there was no written notice to the Crosbys indicating that the Reeds intended to retain the collateral.

Second, the time period was reasonable. The Reeds took possession of the restaurant and began to make improvements to preserve and increase the value of the collateral. The eight months of retention by the Reeds was much shorter than the periods of time in question in the cases generally cited by the Crosbys. *E.g., Haufler v. Ardinger*, 1979 Mass.App.Div. 532, 1979 WL 30107 (1979) (38 months); *Banker v. Upper Valley Refrigeration Co., Inc.*, 771 F.Supp. 6, 10 (D.N.H.1991) (18 months); *Shultz v. Delaware Trust Co.*, 360 A.2d 576, 578 (Del.Super.Ct.1976) (over 5 years); *Moran v. Holman*, 514 P.2d 817, 818 (Alaska 1973) (4 months); *In re Nardone*, 70 B.R. 1010, 1017 (Bankr.D.Mass.1987) (2 years); *In re Boyd*, 73 B.R. 122, 124 (Bankr. N.D.Tex.1987) (3 months).

The only cases cited where the retention period was less than a year, as in the present case, were the *Holman* and *Boyd* cases which both contained unusual circumstances causing prejudice to the debtor. In *Holman*, for example, the secured party used the repossessed automobile for purposes other than its preservation and did not attempt to sell it or dispose of it even though it was a depreciating asset. *Holman*, 514 P.2d at 818. In *Boyd*, the secured party repossessed a boat and its employees began using it for their own use. *Boyd*, 73 B.R. at 124. In the present case, there was no evidence of prejudice caused by the length of time between the repossession and the sale.

Third, the mere fact that the Reeds made statements in public concerning the restaurant and displayed an application for a liquor

license does not manifest an intent to accept the collateral in satisfaction of the obligation under § 9505(2). These actions were done to promote the restaurant and not to cause prejudice to the debtors.

Therefore, we hold that there was no retention, whether implied or actual, of the collateral in satisfaction of the Crosbys' obligation.

### B. *Public Sale of Collateral*

■ California Commercial Code § 9504(2)(b) provides in pertinent part:

> If the security interest secures an indebtedness, the debtor is liable for any deficiency unless otherwise agreed ... but only (i) if the debtor was given *notice*, ... of the disposition of the collateral in accordance with subdivision (3), and the disposition of the collateral by the secured party pursuant to this section was conducted in *good faith and in a commercially reasonable manner....*

Cal.Comm.Code § 9504(2)(b) (West 1994 Supp.) (emphasis added).

### 1. *Proper Notice*

The purpose of the notice requirement of Cal.Comm.Code § 9504(2)(b) is to give debtors "sufficient time to take appropriate steps to protect their interest by taking part in the sale or other disposition if they so desire." Uniform Commercial Code § 9–504, Comment 5. "The notice requirement ... is inspired by the usually forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friends to bid for it." James J. White and Robert S. Summers, *Uniform Commercial Code*, § 27–9 at 590 (3d ed. 1988).

"It is well established in California that failure to comply with the notice requirement precludes the secured party from recovering a deficiency judgment against the 'debtor.'" *Connolly v. Bank of Sonoma County*, 184 Cal.App.3d 1119, 229 Cal.Rptr. 396, 398 (1986) (citations omitted).

> The California Court of Appeal has stated:
> Notice to the debtor is the mechanism that the Legislature and the drafters of the Uniform Commercial Code chose to ensure that sales of collateral are conducted in a commercially reasonable fashion. Notice serves this purpose by giving the debtor an opportunity to monitor the sale to ensure its commercial reasonableness. The right to a deficiency judgment is conditional and depends on strict compliance with the statutory requirements.

*Backes v. Village Corner, Inc.*, 197 Cal. App.3d 209, 242 Cal.Rptr. 716, 719 (1987) (citations omitted).

### a. *Sufficiency of Description of Collateral*

The Crosbys argue that the notice did not contain a legally sufficient description of the collateral. Specifically, the Crosbys argue that the covenant not to compete was part of the security agreement, since it was "tantamount to goodwill" and that it should have been included in the notice of the public sale. The bankruptcy court disagreed and found that the covenant was not taken as security.

The security agreement stated that the collateral was in all stock in trade, goodwill, fixtures and equipment of the restaurant. There was no mention of the covenant as part of the collateral.

■ Under the California Business and Professions Code, a covenant not to compete is completely invalid unless given in connection with the sale of the goodwill of a business or the dissolution of a partnership. *See* Cal.Bus. & Prof.Code § 16600–16602 (West 1987). However, goodwill can be sold without a covenant not to compete. Thus, since there was no express provision in the security agreement, we hold that the covenant was not part of the security agreement and accordingly was not required to be described in the notice of the public sale.

### b. *Ten Days' Notice Prior to Sale*

■ The security agreement provided that the "[s]ecured party will give [the] debtor at least ten (10) days prior written notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition may be made."

The Crosbys assert that they only received nine days' notice. The Reeds respond that

there was ten days' notice provided, but that the Crosbys waived this issue by not raising it in the trial court. We agree that the issue was waived.

■ As a general rule, an appellate court will not consider an issue raised for the first time on appeal unless it falls within one of three exceptions to the general rule. *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985) (exception to general rule allowed where (1) review is necessary to prevent miscarriage of justice or preserve integrity of judicial process; (2) a new issue arises while appeal is pending due to change in law; or (3) issue presented is purely one of law and either does not depend on factual record developed below or pertinent record has been fully developed). As none of the recognized exceptions apply in this case, we decline to consider whether the notice was received in nine or ten days as required by the security agreement.

## 2. Good Faith and Commercial Reasonableness

■ California Commercial Code § 9504(3) provides in pertinent part:

A sale ... of collateral may be ... at any time and place and on any terms, provided . the secured party acts in *good faith* and in a *commercially reasonable manner.*

Cal.Comm.Code. § 9504(3) (West 1994 Supp.) (emphasis added).

### a. Good Faith

■ In exercising a power of sale, the secured party must act in good faith and safeguard the interests of the debtor. The secured party must exercise reasonable care and diligence to obtain a reasonable price. *Faivret v. First Nat'l Bank in Richmond,* 160 F.2d 827, 831 (9th Cir.1947).

Here, the Reeds acted in good faith by conducting a public sale with a licensed auctioneer. In addition, the Reeds obtained appraisals shortly after repossession and the creditors bid the appraised value of the restaurant. Thus, based on the evidence before us, the Reeds acted in good faith.

### b. Commercial Reasonableness

In surveying differing state views on this issue, one learned treatise has stated:

Generally, the courts which have considered the question have held, either expressly or by necessary implication, that the determination of whether a secured party has disposed of repossessed collateral in a commercially reasonable manner, as required by UCC § 9–504(3), should be based on a consideration of all relevant factors in each individual case, with emphasis being given to the aggregate of circumstances rather than to specific details taken in isolation, and that the factors of manner, method, time, place, and terms, mentioned in the statute, are to be viewed as necessary and interrelated parts of the whole transaction.

Richard C. Tinney, Annotation, *What is "Commercially Reasonable" Disposition of Collateral Required by UCC § 9–504(3),* 7 A.L.R.4th 308, 316 (1981).

Although repeatedly used in the California Commercial Code, the term "commercially reasonable" is not specifically defined therein. However, case law has developed which provides some insight into those instances in which a sale is considered unreasonable. *Ingersoll–Rand,* 817 F.2d at 1427. Seventeen factors can be derived from the case law, each of which are of equal weight and should be applied in determining whether a sale of collateral is "commercially unreasonable."[5] The factors are:

1. Choice of public or private sale;
2. Sale at wholesale or retail price;
3. Sale as unit or in parcels;
4. Price realized on foreclosure sale;
5. Price realized on subsequent sale;
6. Time of sale;
7. Place of sale;
8. Solicitation and receipt of bids;
9. Publicity;
10. Appraisal;
11. Sale with or without repair;
12. Familiarity with type of property;
13. Judicial approval of disposition;

---

**5.** This summary is based on Richard C. Tinney's annotation at 7 A.L.R.4th 308 (1981).

14. Secured party's purchase of collateral;
15. Sale of bankruptcy debtor's property;
16. Sale on or at price current in recognized market or in accordance with reasonable commercial practices; or
17. Other factors.

Several of the above factors apply to the present case. The Reeds held a public sale, which was conducted by a licensed auctioneer. The Crosbys assert that the eight month delay between repossession and the sale barred any deficiency. We disagree. As previously stated, the above factors are applied in the aggregate, with each factor given equal weight. Here, it does not appear that an eight month delay was "commercially unreasonable." The Crosbys did not offer any evidence that the delay caused a decline in value or any other type of prejudice.

The fact that the Reeds obtained an appraisal also indicates that the sale was "commercially reasonable." *See In re Cummings*, 147 B.R. 738, 745 (Bankr.D.S.D.1992) (holding sale was commercially unreasonable when creditor did not take an inventory and failed to obtain an appraisal prior to the sale). The Reeds had all of the equipment appraised shortly after repossession; the equipment was valued at $40,290, with a salvage value of $7,970. At the auction sale, the Reeds bid $40,000 for all of the assets being sold. This is a further indication that the sale was "commercially reasonable." [6]

 We therefore hold that when a secured party retains collateral after repossession, and that retention does not cause the debtor any prejudice or decline in value, the secured party may conduct a sale of the collateral within a reasonable time period. Under these facts, the eight month period of time which elapsed before the public sale was conducted was "commercially reasonable" under § 9504(3).[7]

---

6. The Crosbys were treated very fairly by the Reeds. At the time of the foreclosure sale, the lease on the premises had lapsed and it was clear that the Crosbys had no buyer for what was left of the business. Indeed, the credit bid of $40,000 for the inventory was far greater than the salvage value of $7,970 which would have been the value of the inventory to any other purchasers.

### V. CONCLUSION

The Crosbys have failed to prove that there was an election to retain the collateral in satisfaction of the obligation by the Reeds. Proper notice was given under § 9504(2)(b) informing the Crosbys of the public sale of the collateral. The covenant not to compete was not part of the security agreement since it was not included in such agreement. The sale was conducted in a "commercially reasonable" manner. Accordingly, we AFFIRM.

---

7. Because we find the sale was held in a "commercially reasonable" manner, we need not decide whether the prior Commercial Code § 9504 or the present Commercial Code § 9504 that became operative on January 1, 1991 applied to the sale. However, it appears that the result would have been the same under either version.