FILED

JUN 25 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                ) BAP No.   NV-11-1742-DKiPa
                                      )
FRANK J. LEVESQUE and                 ) Bk. No.   10-21796-BAM
BONNIE R. LEVESQUE,                   )
                                      )
              Debtors.                )
_____)
                                      )
FRANK J. LEVESQUE; BONNIE R.          )
LEVESQUE,                             )
                                      )
              Appellants,             )
                                      )
v.                                    )    **O P I N I O N**
                                      )
BRIAN D. SHAPIRO, Chapter 7           )
Trustee,                              )
                                      )
              Appellee.               )
_____)

Argued and Submitted on June 15, 2012
at Las Vegas, Nevada

Filed - June 25, 2012

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce A. Markell, Bankruptcy Judge, Presiding

Appearances:     Edward S. Coleman, Esq. argued for the Appellants;
                 Brian D. Shapiro, Esq. argued for the Appellee.

Before:  DUNN, KIRSCHER and PAPPAS, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

The debtor appellants Frank and Bonnie Levesque (the "Levesques") filed motions (collectively, "Motions") to reopen their chapter 7[1] bankruptcy case and convert it to chapter 11. The bankruptcy court granted their motion to reopen but denied their motion to convert. The Levesques appeal the denial of their conversion motion. We AFFIRM.

## Factual Background

The facts relevant in this appeal are limited and straightforward.

On September 15, 2009, the Levesques were involved in a motor vehicle accident (the "Accident") that apparently resulted in substantial personal injuries to both Mr. and Ms. Levesque. The Levesques already had fallen behind on their mortgage payments, and their financial problems worsened after the Accident.

The Levesques filed a chapter 7 bankruptcy petition on June 24, 2010. Their bankruptcy counsel was Shawn Christopher of the Christopher Legal Group. On June 24, 2010, Brian D. Shapiro ("Trustee") was appointed as the chapter 7 trustee in the Levesques' bankruptcy case.

In their schedules, the Levesques confirmed under penalty of perjury that they did not have any unliquidated claims against

---

[1] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

any third parties. On June 28, 2010, the Levesques provided written answers under penalty of perjury in a bankruptcy questionnaire, both answering "No" to the following questions:

. . .

9. Does anyone owe you any money for any reason?

10. Do you have any claim against anyone that is not listed in your Schedules?

11. Have you filed or do you have a reason to file any lawsuit against any one for any reason?

The Levesques attended their § 341(a) meeting and testified under oath that their schedules were true and accurate.

The Levesques received their discharge by order entered on October 4, 2010. The Trustee was discharged and the Levesques' chapter 7 case was closed by Final Decree entered on October 7, 2010.

Sometime prior to October 18, 2010, the Levesques retained the Law Office of Henness & Haight (the "Henness Firm") to pursue recovery of damages (the "Claim") from Falcon Industries, Inc. ("Falcon") based on their injuries resulting from the Accident. On October 18, 2010, the Henness Firm made demand on Falcon for $750,000. On January 5, 2011, the Levesques filed a lawsuit against Falcon (the "Lawsuit") to assert the Claim.

During a deposition of the Levesques taken in the Lawsuit, counsel for Falcon questioned the Levesques and asked them why they had not listed the Claim in their bankruptcy, intimating that they "had committed some fraud." Tr. of December 13, 2011 Hr'g at 4:1-8. Thereafter, on November 11, 2011, the Levesques, through new counsel, Edward S. Coleman, filed the Motions. In

-3-

the combined Motions, the Levesques disclosed the Claim to the bankruptcy court for the first time.

The Trustee joined the Levesques' motion to reopen their bankruptcy case but opposed their motion to convert it to chapter 11, based on their prior failures to disclose the Claim, citing Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007). The Levesques filed the affidavit of Ms. Levesque in support of their motion to convert, stating in substance that the Levesques failed to disclose the Claim in their schedules and in their testimony at the § 341(a) meeting based on advice from their attorney in light of the fact that there was no pending lawsuit. The Trustee moved to strike Ms. Levesque's affidavit as filed in violation of the bankruptcy court's local rules and filed late.

The bankruptcy court heard argument on the Motions at a hearing ("Hearing") on December 13, 2011. At the Hearing, the bankruptcy court denied the Trustee's motion to strike Ms. Levesque's affidavit. Following argument, the bankruptcy court announced oral findings of fact and conclusions of law on the record, citing the Supreme Court's Marrama decision, and granted the Levesques' motion to reopen their bankruptcy case, but denied their motion to convert to chapter 11.

The bankruptcy court entered an order reopening the Levesques' bankruptcy case and denying their motion to convert the case to chapter 11 on December 19, 2011. The Levesques timely appealed.

At oral argument, the Trustee advised that he had been reappointed as the trustee in the Levesques' reopened chapter 7 case.

-4-

## Jurisdiction

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## Issues

1. Did the Trustee have standing to be heard on the Levesques' Motions?

2. Did the bankruptcy court abuse its discretion in denying the Levesques' motion to convert?

## Standards of Review

We review de novo whether a party has standing. Mayfield v. United States, 599 F.3d 964, 970 (9th Cir. 2010); Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011).

We review an order regarding conversion of a case for abuse of discretion. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 771 (9th Cir. 2008); Beatty v. Traub (In re Beatty), 162 B.R. 853, 855 (9th Cir. BAP 1994); Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007). We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings for clear error. Id. at 1262 and n.20. We must affirm the bankruptcy court's factual findings unless we determine that those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may

-5-

be drawn from the facts in the record.'" Id.

## Discussion

1. The Trustee had standing to appear and be heard with respect to the Motions.

This appeal is all about control of litigation of the Claim. The Levesques argue that the Trustee had no standing to file pleadings and be heard with respect to the Motions because he had filed his final report and been discharged and, consequently, had no stake in the relief sought by the Levesques. Appellants' Opening Brief at 6-7. The Trustee responds that the Levesques did not raise any issue as to the Trustee's standing in their pleadings, including the affidavit of Ms. Levesque, presented to the bankruptcy court. Appellee's Brief at 8. We note that counsel for the Levesques did not question the Trustee's standing at the Hearing.

Ordinarily, if an issue is not raised before the trial court, it will not be considered on appeal and will be deemed waived. See, e.g., Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1087 n.6 (9th Cir. 2003); Crosby v. Reed (In re Crosby), 176 B.R. 189, 195 (9th Cir. BAP 1994). However, in light of the significance of the issue of the Trustee's standing in this context, we exercise our discretion to consider the standing issue raised in the Levesques' opening brief. See City of Los Angeles v. County of Kern, 581 F.3d 841, 845-46 (9th Cir. 2009).

This is an issue of first impression before this Panel. Rule 5010, titled "Reopening Cases," specifically provides that, "A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." (Emphasis added.)

-6-

The term "party in interest" is not defined in the Bankruptcy Code or Rules. The Levesques, as debtors, filed the motion to reopen their case, and their standing under Rule 5010 is not in question. On the other hand, the Trustee's standing to appear with respect to the Motions presents some interesting technical issues that need to be resolved.

We conclude that to deny the Trustee standing to appear and be heard with respect to the Motions would, in the words of the Supreme Court's recent decision (albeit in a different context) in RadLAX Gateway Hotel, LLC v. Amalgamated Bank, be "hyperliteral and contrary to common sense," for the following reasons. RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2068 (2012).

At the outset, it truly would be ironic, and reward disingenuousness, to deny standing to the Trustee as a party in interest to be heard with respect to the Motions at the behest of the Levesques, when at the time the Motions were filed, the Levesques did not own the Claim that was the sole reason for the Motions. The Claim belonged to their bankruptcy estate. See §§ 541 (property of the estate) and 554(d) (property not abandoned or administered remains property of the estate); Lopez v. Specialty Rests. Corp. (In re Lopez), 283 B.R. 22, 28 (9th Cir. BAP 2002) (An unscheduled claim "that is neither abandoned nor administered remains property of the estate even after the case is closed."). The Levesques could not even claim an exemption regarding the Claim until after their bankruptcy case was reopened. On the other hand, the only reason the Trustee did not administer the Claim before the case closed in October 2011

-7-

was because the Levesques failed to disclose it, and no other potential "party in interest" is more knowledgeable about the Levesques' bankruptcy case than the Trustee.

Procedurally, this appeal presents an unusual fact pattern. Ordinarily, the Levesques' motion to reopen would have been set for hearing separately. After it was granted for the purpose of further administration of estate assets, the Trustee or a new chapter 7 trustee would have been appointed or reappointed. As noted above, the Trustee was reappointed in this case. If thereafter, the Levesques' motion to convert was set for hearing, there would be no question as to the Trustee's standing to appear and be heard with respect to the motion to convert. However, the Levesques filed the Motions in a single pleading, and the Motions were scheduled to be heard together.

In these circumstances, we are inclined to follow what appears to be the majority approach, recognizing the standing of a discharged chapter 7 trustee to appear and be heard as a party in interest in proceedings relating to reopening a closed case for administration of undisclosed assets. The rationale for that position is well stated in the opinion of the district court in White v. Boston (In re White), 104 B.R. 951, 954 (S.D. Ind. 1989):

> [T]he argument [against standing] is overly formalistic. Followed to its logical conclusion, it would also preclude creditors from seeking a reopening to administer undisclosed assets on the grounds that they would merely be former creditors. Moreover, it is established case law that a trustee's powers are terminated only when the estate has been properly closed. It would be incongruous to permit a debtor who has failed to disclose assets to use this failure (and the subsequent erroneous closing) as a shield against reopening. The distinction between a "trustee" and a

-8-

"former trustee" urged by the debtors is semantic rather than substantive, and does not effect a talismanic change in the trustee's legal status. Therefore, the mere closing of an estate cannot in [and] of itself prohibit trustee standing. (Emphasis in original.)

See In re Linton, 136 F.3d 544, 546 (7th Cir. 1998) ("A bankruptcy proceeding can be reopened for cause, . . . § 350(b), by 'the debtor or other party in interest.' [Rule] 5010. The term 'party in interest' is not defined, but is generally held to include the trustee.") (citations omitted and emphasis added); Mendelsohn v. Ozer, 241 B.R. 503, 506 (E.D.N.Y. 1997); In re Sweeney, 275 B.R. 730, 735-36 (Bankr. W.D. Pa. 2002); In re Avis, 1996 WL 910911, at *2 n.1 (Bankr. E.D. Va. 1996); In re Winebrenner, 170 B.R. 878, 881 (Bankr. E.D. Va. 1994); In re Stewart, 154 B.R. 711 (Bankr. N.D. Ill. 1993); In re Stanke, 41 B.R. 379, 381 (Bankr. W.D. Mo. 1984) ("As one of the few persons informed as to the case, the trustee is a natural person to hold and to exercise the power to move to reopen if his duty is unfinished.").

In the White case, the debtors sought to overturn on appeal the bankruptcy court's decision to grant the trustee's motion to reopen a closed case to administer assets not listed on the debtors' schedules. The case law cited by the White court for the proposition that a trustee's authority is only terminated when a case is "properly" closed includes this Panel's decision in Gross v. Petty (In re Petty), 93 B.R. 208 (9th Cir. BAP 1988). In Petty, the trustee moved to reopen a closed chapter 7 case to recover an alleged preference that was under investigation at the time that the bankruptcy case was closed administratively. The

preference defendants appealed the judgment that ultimately was entered in favor of the trustee by the bankruptcy court. Id. at 210-11.

Although the trustee's standing to reopen the case was not raised as an issue in Petty, the Panel did discuss the impact of an undisclosed estate asset on case closure:

> [S]ince the debtors' potential interest in the subject real estate was not disclosed in the bankruptcy petition the case was never fully administered within the meaning of § 350(a), and therefore not properly closed under that section. . . . Once it has been established that the case was not properly closed and may be reopened to administer the assets of the debtor's estate it would be anomalous to bar the collection of the very assets sought to be recovered because the case was closed.

Id. at 212. Likewise, in such circumstances, it would be anomalous not to treat the trustee, the most knowledgeable party concerning administration of the estate, as a party in interest for purposes of Rule 5010, exercising residual authority with respect to any undisclosed estate assets.

We recognize that the discharge of the Trustee in conjunction with the original closing of the Levesques' chapter 7 case raises a technical question as to his authority to administer or otherwise deal with the Claim during the period between the date of entry of the closing order and the date of a new trustee appointment following the reopening of the case. However, under § 323(a), the trustee in a bankruptcy case is "the representative of the estate."

> Although the trustee is not vested with the title of the debtor under the Code, section 323(a) gives the trustee full authority to represent the estate and to dispose of the debtor's nonexempt property that makes up the estate.

-10-

> The trustee is required to collect and reduce to money the nonexempt property of the estate, and therefore is entitled to administer the property of the estate wherever located, <u>including the debtor's prepetition causes of action</u>.

3 <u>Collier on Bankruptcy</u> ¶ 323.02[1] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2012) (emphasis added).

In addition, the bankruptcy court in <u>In re Sweeney</u> questioned the assumption that a discharged trustee has no authority to act on behalf of the estate when § 727(e) expressly authorizes the <u>trustee</u> to request a revocation of the debtor's discharge after the discharge has been granted <u>and</u> after the bankruptcy case has been closed.[2] <u>In re Sweeney</u>, 275 B.R. at 735.

Clearly, the Levesques had no authority to administer the Claim on behalf of the estate. Also, as we previously have noted, it was the Levesques, rather than the Trustee, who filed the motion to reopen.

There are decisions denying a discharged trustee standing to move to reopen a chapter 7 case to administer assets. <u>See, e.g.</u>, <u>In re DeLash</u>, 260 B.R. 4 (Bankr. E.D. Cal. 2000) (citing <u>In re Ayoub</u>, 72 B.R. 808, 812 (Bankr. M.D. Fla. 1987)); <u>In re Thomas</u>, 236 B.R. 573, 576-77 (Bankr. E.D.N.Y. 1999). Two rationales

---

[2] Section 727(e) provides that:
> <u>The trustee</u>, a creditor, or the United States trustee may request a revocation of a discharge-- (1) under subsection (d)(1) of this section within one year after such discharge is granted; or (2) under subsection (d)(2) or (d)(3) of this section before <u>the later of</u>--(A) one year after the granting of such discharge; and (B) <u>the date the case is closed</u>. (Emphasis added.)

-11-

support this result. First, when a bankruptcy case is reopened, the United States Trustee ("UST") appoints a new trustee, but only following a determination by the bankruptcy court "that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case." Rule 5010. Once that determination is made, the UST may or may not reappoint the original trustee. Handbook for Chapter 7 Trustees (hereafter, "Handbook for Chapter 7 Trustees"), U.S. Dep't of Justice, Executive Office of the United States Trustee, July 1, 2002, at p. 8-44. Until reappointment by the UST, the discharged trustee arguably is not authorized to represent the bankruptcy estate and receive compensation for doing so and accordingly, would have no standing to move to have the case reopened or appear in proceedings relating to the case. See In re Thomas, 236 B.R. at 576-77. The bankruptcy court further arguably would be treading improperly upon the UST's prerogatives in recognizing standing for a former trustee in advance of such reappointment. See In re DeLash, 260 B.R. at 6-8; In re Ayoub, 72 B.R. at 812.

Second, other parties with standing, such as the UST and creditors, ostensibly are available to move to reopen bankruptcy cases to administer assets. See In re DeLash, 260 B.R. at 6-7; In re Thomas, 236 B.R. at 577. The UST is explicitly authorized under the Bankruptcy Code to "appear and be heard on any issue in any case or proceeding under this title," except for filing a plan under chapter 11. § 307. However, that does not mean in practice that the UST appears in every situation where it is authorized to do so. The UST has limited resources to apply to

the many tasks it is delegated to perform concerning various bankruptcy proceedings, and typically, the UST does not initiate the bulk of motions to reopen closed cases. In fact, as noted by the bankruptcy court in In re DeLash, 260 B.R. at 6 n.3, the Handbook for Chapter 7 Trustees states (at page 8-44 in the July 1, 2002 edition) that, "[I]f the court has officially closed a case, the trustee, the [UST], or some other party in interest, will have to file a motion to reopen the case. . . ." (Emphasis added.)

Relying on "creditors" to move to reopen a case is problematic, both on technical and practical grounds. First, as a technical matter, if the discharge has been entered, do the "former" creditors of the debtor have standing to move to reopen the case? The DeLash court discounted that argument, asserting that under the distribution scheme mandated by the Bankruptcy Code, prepetition creditors are entitled to distributions from estate assets that have not previously been administered. "Given this right, it would be illogical to argue that a creditor of a discharged chapter 7 debtor is a former creditor without standing to reopen the case." In re DeLash, 260 B.R. at 7. Accepting that position, it would appear that prepetition creditors would satisfy the "pecuniary interest" test for standing stated in Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442-43 (9th Cir. 1983), if they took the initiative to file a motion to reopen.

However, if one depends on prepetition creditors to take the laboring oar on motions to reopen, one confronts the reality that it effectively asks the former creditors to expend 100 cent

-13-

dollars currently on proceedings to reopen a case that, like the Levesques' bankruptcy case, may have been closed for months or even years, for the benefit of a speculative recovery that has to be shared pro rata with other like-situated prepetition creditors. Realistically, the financial incentives for such conduct generally are slim to nonexistent, and in such circumstances, the prepetition creditors are not likely parties to take the lead on motions to reopen.

Based on our analysis of the applicable law and foregoing authorities in this context, our ultimate conclusion is that it would exalt form over substance, to the detriment of creditors and the bankruptcy estate, if the Trustee were not recognized as having standing to appear and be heard with respect to the Motions. No party was in a better position than the Trustee to advise the bankruptcy court as to the status and history of the Levesques' bankruptcy case and administration of their estate. We conclude that the Levesques' argument that the Trustee had no standing to appear regarding the Motions lacks merit.

2. <u>The bankruptcy court did not abuse its discretion in denying the Levesques' motion to convert the reopened case to chapter 11</u>.

Under § 706(a), a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." In spite of the straightforward language of § 706(a), in <u>Marrama v. Citizens Bank of Mass.</u>, 549 U.S. 365 (2007), the Supreme Court held that the apparently absolute right of the debtor to convert a chapter 7 case to chapter 13 could be curtailed in the "atypical" case of a

-14-

fraudulent or "bad faith" debtor, in order "to prevent an abuse of process." Id. at 375 & n.11. As pointedly remarked at the outset of the Marrama decision, "The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." Id. at 367 (citing Grogan v. Garner, 498 U.S. 279, 286, 287 (1991)) (internal quotation marks omitted).

While the Levesques' motion to convert requested a conversion from chapter 7 to chapter 11, rather than to chapter 13, the language of § 706(a) applies the same whether the chosen chapter for conversion is chapter 11 or chapter 13. Consequently, there is no dispute between the parties as to the application of § 706(a), as interpreted by Marrama, in this appeal. Since the bankruptcy court referred explicitly to the Marrama decision in its oral findings and conclusions, we conclude that the bankruptcy court applied the correct legal standard in deciding the Levesques' motion to convert.

The Levesques argue, however, that the bankruptcy court did not give adequate weight to the evidence of the Levesques' good faith in relying on the advice of their counsel, as set forth in Ms. Levesque's affidavit, and that they "effectively canceled" any failure to disclose their Claim by filing the Motions. They earnestly spin the facts in their favor, but their argument misapprehends the standards applicable to analyze whether the bankruptcy court clearly erred in its fact findings.

As noted above, in determining whether the bankruptcy court abused its discretion, we must affirm the bankruptcy court's fact findings unless we determine that those findings are illogical, implausible, or without any support from inferences that may be

drawn from the evidentiary record. Hinkson, 585 F.3d at 1262 and n.20. If the bankruptcy court's analysis of the evidence makes sense consistent with the entire record, we may not reverse even if we were convinced that we might have weighed the evidence differently. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985). See Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo), 408 B.R. 280, 289 (9th Cir. BAP 2009).

In this case, the bankruptcy court was very careful in its fact findings in support of denial of the motion to convert. It did not find that the Levesques had committed fraud, and it did not determine that the Levesques had "lied." However, the bankruptcy court did find that the Levesques "didn't tell the truth and certainly signed things under oath and under penalty of perjury that were not true." Tr. of December 13, 2011 Hr'g at 21:3-5. The record, as discussed above, amply supports those findings. In addition, the bankruptcy court questioned the Levesques' credibility based on their failure to pursue any claim against their former bankruptcy counsel, whose advice they claim led them to their failures of disclosure and thus allegedly put them in their present predicament.

Based on the record presented in this appeal, we can discern no error, let alone clear error, of fact that would lead us to conclude that the bankruptcy court abused its discretion in denying the Levesques' motion to convert.

### Conclusion

For the foregoing reasons, we AFFIRM.