661 So.2d 879 (1995)
Aquilla J. ALLEN and Virginia C. Allen, Appellants,
v.
Richard COATES, an Individual, a/k/a Richard A. Coates, Jr., Appellee.
No. 94-505.
District Court of Appeal of Florida, First District.
October 10, 1995.
*880 James G. Mahorner, Jacksonville Beach, for appellants.
Samuel S. Jacobson of Datz, Jacobson, Lembcke & Garfinkel, Jacksonville, for appellee.
VAN NORTWICK, Judge.
Aquilla J. Allen and Virginia C. Allen appeal a final summary judgment in favor of appellee, Richard Coates, on the Allens' complaint which sought judgment on promissory notes that were made by Coates as the purchase price for his acquisition from the Allens of the capital stock of Allen's Electrical Center, Inc. (AEC). Following default under the notes by Coates, the Allens reassumed control and operation of AEC, the capital stock of which secured payment of the notes, and, at the same time, sought to recover a judgment on the full amount of the notes. The trial court granted summary judgment in favor of Coates, ruling that the Allens were not entitled to judgment on the notes after retaking control and possession of AEC, because the undisputed facts established that in retaking the business they had failed to comply with the requirements of Chapter 679, Florida Statutes. The Allens argue that the trial court erred because Chapter 679, Article 9 of the Uniform Commercial Code, is not applicable here. We disagree and, since the Allens presented no facts to the trial court on which they might *881 recover a deficiency judgment under the notes, we affirm.

Factual Background
The Allens owned all of the capital stock of AEC, a Florida corporation that distributed light fixtures and electrical supplies. On April 28, 1992, pursuant to a stock purchase and sale agreement, the Allens sold the corporate stock of AEC to Coates for a purchase price of $150,000, paid by Coates' delivery to the Allens of two promissory notes of $75,000 each, payable over 10 years in equal monthly installments.[1] The stock purchase and sale agreement provided that, in the event Coates defaulted in the payment of the notes, the full amount payable under the notes accelerated and "if such amount is not paid within ten (10) days thereafter, the stock conveyed becomes the property of the Sellers, at Sellers' election upon written notice to Purchaser to satisfy any unpaid balance."
During January 1993, Coates defaulted on the monthly payment due on the notes for December 1992. Further, he notified the Allens that he would be unable to make the note payments due in January and February 1993. As a result, in late January 1993, the parties agreed that ownership of the AEC business would be transferred back to the Allens. Coates delivered the keys to the AEC business premises to the Allens. The Allens took control of AEC, electing themselves corporate officers, and operated its business.
In June 1993 the Allens filed suit against Coates seeking, among other things, a judgment on the full amount of the two $75,000 notes.[2] In granting summary judgment in favor of Coates, the trial court ruled that the Allens were not entitled to a judgment on the notes, concluding:
It is undisputed that [the Allens] retook the business without any effort at compliance with Chapter 679 [Florida Statutes], including sections 679.504 and 679.505. [The Allens] accordingly are not entitled to prevail here on their request for a money judgment.

Application of Chapter 679
Raising issues of first impression in Florida, the Allens argued below and argue here that any failure on their part to comply with the requirements of Chapter 679, Florida Statutes, in retaking control of AEC, should not bar their action on the notes, because the Uniform Commercial Code in general and Chapter 679 in particular do not apply to the sale of a business. The Allens contend that, as a result, the trial court's reliance on Chapter 679 in granting summary judgment was error.[3] Although we have found no Florida case which directly addresses whether the Code applies to a security interest in corporate stock granted in connection with the sale of all of the capital stock of a closely-held corporation, we conclude that the Allens' argument is contrary to the clear language and intent of the Uniform Commercial Code. The Code does apply to the security interest granted in the AEC stock in the instant case.
The use of corporate stock as collateral is governed by a combination of Article 8 and Article 9 of the Code; codified in Florida Statutes as Chapters 678 and 679, respectively. The first issue to be resolved is whether the Uniform Commercial Code applies to the capital stock of a closely-held corporation, such as AEC. Although there is a split of *882 authority among the various states,[4] we agree with the reasoning in the majority of jurisdictions and conclude that a "security," as defined in subsection 678.102(1), Florida Statutes, includes the corporate stock of a closely held corporation.[5]
Under subsection 678.102(1)(a), a "certificated security" includes:
"a share ... of the issuer which is ... [r]epresented by an instrument issued in bearer or registered form ... [o]f a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investments... ."
In concluding that the corporate stock of a closely-held corporation falls within this definition, we are guided by the official comments of the Uniform Commercial Code adopted in Florida, which provide, in part, as follows:
Interests such as the stock of closely-held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definitions of both certificated and uncertificated securities by the inclusion of interests "of a type" commonly traded in those markets.
West's F.S.A. § 678.102 comment 2. Further, we agree with the following analysis of the North Carolina Supreme Court in its consideration of this same issue:
[I]t is inconsequential whether the shares of stock in question are in fact suitable for trading or have ever been traded on an exchange or market. The statutory definition only requires ... that instruments be "of a type" that is dealt in on securities exchanges or markets in order to be deemed investment securities. Since stock exchanges and markets generally facilitate the trading of shares of corporate stock ... the shares of a corporation  whether publicly or close held  are instruments "of a type" commonly dealt in on securities exchanges or markets.
Stancil v. Stancil, 326 N.C. 766, 392 S.E.2d 373, 375 (1990). In addition, not only is stock in a closely-held corporation an interest "of a type" that is traded on securities markets, but it is also "commonly recognized" in Florida and elsewhere as a "medium for investment." § 678.102(1)(a)2, Fla. Stat. (1993). As an example of this recognition, the United States and the states govern the raising of capital through this "medium for investment" by the regulation of private offerings of securities of small businesses. See, e.g., 15 U.S.C. § 77d(2); 17 C.F.R. §§ 230.501-230.505; § 517.061, Fla. Stat. (1993).
Having determined that a security interest in the capital stock of AEC is governed generally by the Code, we now address the Allens' argument that Chapter 679 does not apply to the security interest in AEC stock, since the interest arises from the sale of a business. We conclude that the Code contains no general exception for a transaction involving the sale of a business and that Chapter 679 applies to a security interest in a corporation's stock granted to secure payment of the purchase price of a business sale. *883 Section 678.321, Florida Statutes, governs the creation, perfection and termination of security interests in securities. Subsection 678.321(3), in turn, provides that, subject to two exceptions not applicable here, "[a] security interest in a security is subject to the provisions of Chapter 679... ." This cross reference is consistent with the purpose of Chapter 679, which is to apply to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts; ... [and] to security interests created by contract... ." § 679.102(1)(a) and (2), Fla. Stat. (1993). As stated in the official comments to section 9-102 of the Code, "[t]he main purpose of this Section is to bring all consensual security interests in personal property and fixtures under this Article, except for certain types of transactions excluded by section 9-104." West's F.S.A. § 679.102 comments to 1972 revision. No provision in the Code generally excludes from the Code's application security interests granted in connection with the sale of a business. Further, the Allens have cited no case, and we have found none, that would generally exclude the sale of a business from the application of Chapter 679.
The Allens' argument that subsection 679.104(6) removes this transaction from the application of Chapter 679 is also without merit. Subsection 679.104(6) on its face does not exclude all transactions involving the sale of a business from the application of Chapter 679, but only "a sale of accounts or chattel paper as a part of the sale of the business out of which they arose." The transaction that is the subject of this appeal did not involve the sale of accounts or chattel paper, however, but the sale of all of the capital stock of a closely-held corporation and the retention of a security interest in that capital stock. Accordingly, Chapter 679 applies to the security interest in the stock of AEC granted to the Allens in the stock purchase and sales agreement.

Remedies Under Chapter 679
To correctly analyze whether the Allens have a right to a judgment, whether full or deficiency, on the promissory notes after retaking possession and ownership of AEC, it is necessary to determine, first, what remedies are available to them under the Code; second, what requirements are imposed on the exercise of such remedies; and, finally, whether the Allens complied with those requirements. As discussed above, Chapter 679 sets forth the rights and remedies available to the parties when money is loaned and repayment is secured by a security interest in personal property. After default, Chapter 679 gives a secured party, such as the Allens, the three basic options set forth below. Each of these options, while permitting the creditor under some circumstances to obtain the collateral, provide safeguards to assure the debtor that the secured party will not take unfair advantage of the situation and that the value of the collateral will be fairly ascertained in determining whether any deficiency is allowable.
1. Judicial Proceeding. Under subsection 679.501(1) the secured party "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." After the secured party has reduced his claim to judgment and a judicial sale of the debtor's property is had, "the secured party may purchase at the sale and thereafter hold the collateral free of any other requirements of this chapter." § 679.501(5), Fla. Stat. A secured party choosing this option may take possession of the collateral prior to obtaining judgment but "once the secured party repossesses collateral to secure payment of the debt after default, that party is under a duty of care to protect and preserve the collateral and dispose of it in a manner likely to bring the full fair value." Florida First National Bank v. Martin, 449 So.2d 861, 865 (Fla. 1st DCA 1984), rev'd on other grounds, Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362 (Fla. 1986).
2. Possession and Disposition. Under section 679.503, on default a secured party has the right to take possession of the collateral "without judicial process if this can be done without breach of the peace." Pursuant to section 679.504, the secured party may then "sell, lease or otherwise dispose of any *884 or all of the collateral ... by public or private proceedings." § 679.504(1) and (3), Fla. Stat. In connection with a sale under this section, the secured party must "account to the debtor for any surplus," "the debtor is liable for any deficiency," and every aspect of the disposition "must be commercially reasonable." § 679.502(2), Fla. Stat. In addition, the secured creditor must give the debtor notice of when the sale or other disposition will take place. The secured creditor can buy the collateral himself at any "public sale," but cannot buy it at a "private sale," unless the collateral is "of a type customarily sold in a recognized market or ... the subject of widely distributed standard price quotations." § 679.504(3), Fla. Stat. These rules, in part, seek to protect the debtor, because they help prevent the creditor from acquiring the collateral at less than its true value or unfairly understating its value so as to obtain an excessive deficiency judgment. 2 J. White and R. Summers, Uniform Commercial Code 590, 599 (3d Ed. 1988); 1A P. Coogan, W. Hogan, J. Vagts and J. McDonnell, Secured Transactions Under the Uniform Commercial Code, § 8.04(2)(c) at 8-97, § 8.06(2) at 8-123 (1989).
3. Retention of Collateral. Under subsection 679.505(2), if 60% of the debt has not been paid, the secured creditor "may, after default, propose to retain the collateral in satisfaction of the obligation." If this so-called "strict foreclosure" remedy is pursued, the secured party is required to give written notice of the election to retain the collateral in full satisfaction of the obligation, and the debtor can force a sale under section 679.504 by objecting in writing to the retention of collateral within 30 days from the date of the notification. This option is not available to a secured creditor who wishes to resell the collateral and avoid section 679.504, see, e.g., Reeves v. Foutz and Tanner, Inc., 94 N.M. 760, 617 P.2d 149 (1980), and is generally described as a rule of convenience, recognizing that "[t]he best and simplest way of liquidating any secured transaction, default having occurred, is for the secured party to keep the collateral as his own free of the debtor's equity, waiving any claim to a deficiency judgment." G. Gilmore, Security Interests in Personal Property § 44.3 (1965).

The Allens' Election to Retain Collateral and its Results
In the present case, the Allens cannot look to subsection 679.501(1) to support their claim to a judgment on the full amount of the notes or even to a deficiency judgment, because the Allens did not choose the "judicial proceeding" option. The record makes clear that the Allens neither were seeking a judicial sale of the AEC stock nor were retaking control of the AEC stock for the purpose of preserving it or its value for future disposition. Rather, the undisputed facts establish that the Allens exercised control, not mere possession, of the AEC stock; and were operating AEC's business for their own benefit while seeking a judgment on the two $75,000 notes.
Since the Allens did not elect to take control of the AEC corporate stock and business and hold it for disposition in a public or private sale, the Allens appear to have retaken control of AEC for the purpose of retaining the collateral. However, rather than retaining the collateral in satisfaction of the obligation, as contemplated by subsection 679.505(2), the Allens wish both to retain the collateral and to obtain a judgment on the underlying debt. Since on its face the strict foreclosure provision in subsection 679.505(2) seems to govern only those instances in which a secured party notifies the debtor of his desire to keep the collateral in satisfaction of the debt, we are presented with the question of what, if anything, are the consequences of the Allens' failure to provide such a notice?
The appellate courts of Florida have not addressed the situation presented here. The majority of jurisdictions which have dealt with this issue would hold that a secured creditor's conduct in retaining the collateral brings the transaction within the scope of Code subsection 9-505(2), even though the secured creditor did not consciously chose to invoke this option, and subjects the secured party to a so-called "involuntary strict foreclosure," denying any right to a deficiency *885 judgment.[6] These courts reason that the Uniform Commercial Code intends "to put the creditor to an election to either sell the repossessed collateral pursuant to section 9.504 or to retain the collateral in complete satisfaction of the debt pursuant to section 9.505." Tanenbaum v. Economics Laboratory, Inc., 628 S.W.2d 769, 771-72 (Tex. 1982). In other words, under this line of authority, the secured creditor cannot retain possession of collateral, thereby avoiding a market-based valuation of the collateral under the sale provisions of Code section 9-504, and also obtain a deficiency judgment.[7]
Other jurisdictions, however, have held that subsection 9-505(2) of the Code does not apply when the secured creditor, wishing not to make an election to retain the collateral in full satisfaction of the obligation, does not fulfill the notice requirements under the section.[8] In effect, these courts have refused to impose an "involuntary strict foreclosure" under Code subsection 9-505(2) upon an unwilling secured creditor and have generally limited the debtor's remedy to that provided by Code subsection 9-507(1).[9] This line of authority fashions a remedy for a secured party's noncompliance with Code section 9-505 which is consistent with the remedies provided for noncompliance elsewhere in Article 9. As stated by Professor Hawkland:
Since ... a secured party in such a situation has not complied with the notification requirements of subsection 9-505(2) in order to bring about a strict foreclosure, the *886 situation is properly analyzed under subsection 9-504(3), which imposes the standard of commercial reasonableness on the secured party's disposition. Assuming that the retention of collateral in such a case would be commercially unreasonable, then the secured party's liability under subsection 9-507(1) should be invoked rather than an involuntary strict foreclosure. Of course, the result under subsection 9-507(1) may indeed be the same as the result under an involuntary strict foreclosure, that is, the secured party may keep the collateral but lose any right to a deficiency judgment. Subsection 9-207(3) may also provide some relief for the debtor if the secured party, in retaining the collateral, fails to comply with a standard of reasonable care with respect to that collateral.
Hawkland, Lord & Lewis, UCC Series § 505:09 (1986) (footnotes omitted).
Even in jurisdictions not imposing an "involuntary strict foreclosure" bar to a deficiency judgment when a secured party has retained collateral without complying with subsection 9-505(2) of the Code, the nature of the remedy provided to debtors under subsection 9-507(1) varies greatly. Some courts limit the debtor to an action for damages caused by the failure of the secured party to comply with the Code, see, e.g., In re Replogle, 929 F.2d 836 (1st Cir.1991), while other jurisdictions hold that to obtain a deficiency judgment the secured party must overcome the presumption that the value of the collateral equals the amount of the debt, see, e.g., Alamosa National Bank v. San Luis Valley Grain Growers, Inc., 756 P.2d 1022, 1026 (Colo.Ct.App. 1988), and still others deduct the value of the collateral from the outstanding balance of the debt. See, e.g., Warnaco, Inc. v. Farkas, 872 F.2d 539, 544 (2d Cir.1989).[10]
Although Florida courts have not specifically addressed the situation presented by the present case, in which a secured party retains the collateral without complying with the procedural requirements of subsection 679.505(2) and seeks to obtain a deficiency judgment, we conclude that the instant case is governed by the principles established in Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362 (Fla. 1986). In Weiner, the Florida Supreme Court held that the failure of a secured creditor to dispose of property in a commercially reasonable manner, as required by subsection 679.504(3), does not, as a matter of law, preclude the secured party from obtaining a deficiency judgment. The court observed that "deficiency judgments are specifically sanctioned by the code... [and] [t]he code nowhere provides that the creditor loses his right to a deficiency judgment if he does not act in a commercially reasonable manner." Id. at 1364. As a result, the court determined that the debtor's remedy was supplied by subsection 679.507(1). The court concluded that
the rights of the debtor can be adequately protected by determining the fair market value of the collateral at time of repossession and awarding the debtor additional credit in the amount of the difference between the fair market value of the collateral as determined and the amount the collateral brought in a commercially unreasonable sale.
Id. at 1364. Although rejecting an interpretation of section 679.504 which would have precluded the secured creditor from obtaining a deficiency judgment following a commercially unreasonable sale, the court also did not limit the debtor to a damage action under section 629.507, in which event the debtor would have the burden of proving the damages caused by the commercially unreasonable actions of the secured party. As the Weiner court stated:
the secured party's failure to dispose of collateral in a commercially reasonable manner should not impose a burden upon the debtor to prove damages.
Id. Rather, the Weiner court found that the "fairer rule" would shift "to the creditor, the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law." Id. at *887 1364-65, quoting, Norton v. National Bank of Commerce, 240 Ark. 143, 150, 398 S.W.2d 538, 542 (1966).[11] The court explained the burden imposed on the secured party seeking a deficiency judgment, as follows:
We therefore hold that when it has been determined that a secured party has disposed of collateral in a commercially unreasonable manner, there will arise a presumption that the fair market value of the collateral at the time of repossession was equal to the amount of the total debt that it secured. The burden to prove that the fair market value of the collateral was less than the debt will be upon the secured party. If the secured party meets this burden, he will be allowed to recover a deficiency judgment in an amount equal to the total debt minus the fair market value of the collateral as ultimately determined.
Weiner, 482 So.2d at 1365.
Even though the present case involves a presumptive failure to comply with the requirements of subsection 679.505(2), rather than a commercially unreasonable disposition under section 679.504 as in Weiner, we conclude that the application of the Weiner rule here, and not the involuntary strict foreclosure alternative adopted by a majority of jurisdictions, is more in keeping with the noncompliance remedies provided by the legislature in Chapter 679. Although the rule established in Weiner would not preclude the Allens from obtaining a deficiency judgment as a matter of law, because the Allens retained the collateral without complying with subsection 679.505(2), "there will arise a presumption that the fair market value of the collateral at the time of [retaining it] was equal to the amount of the total debt that it secured." Weiner, 482 So.2d at 1365. To have obtained a deficiency judgment in their action on the notes, the Allens must first have overcome this presumption by establishing that the fair market value of the AEC stock was less than the amount owing under the notes. The Allens' complaint contains no allegations that the balance due under the notes exceeded the value of the AEC stock at the time they retook control and, apparently relying solely on their legal argument that Chapter 679 did not apply to their actions, the Allens presented no facts to the trial court below to establish their right to a deficiency on the notes. Since the Allens failed to produce any factual basis for a deficiency judgment, the trial court correctly granted summary judgment to Coates. Accordingly, we AFFIRM.
BOOTH and MICKLE, JJ., concur.
NOTES
[1] As a part of the sale, the Allens and AEC entered into an agreement not to compete and a lease of the business premises. Although the Allens sought damages from Coates for alleged nonpayment under these agreements, those matters are not before us.
[2] The Allens' one-count complaint also sought foreclosure of certain mortgages allegedly securing the notes and other relief, and the summary judgment also disposed of such claims. Appellants, however, here raise only issues relating to the final summary judgment on their claim for judgment on the notes.
[3] The Allens also argue that they should be able to obtain judgment on the promissory notes because their security interest in the stock of AEC was destroyed by Mr. Coates' transfer of the AEC stock to his wife, who operated the AEC business after the purchase, and because the Allens' retaking control of AEC was merely an action taken in mitigation of their damages. We find that these arguments are without merit.
[4] One commentator has noted that "at least twenty-one state and federal courts have examined the scope of Article 8's definition of an `investment security.' The majority view, endorsed by [seventeen] jurisdictions ... is that close stock falls within the definition; a minority of four courts hold that it does not." M. Brinkley, Note, Close Corporation Stock as a "Security" under Uniform Commercial Code Article 8: North Carolina Embraces the Statute of Frauds in Stancil v. Stancil, 69 N.C.L.Rev. 1432, 1438 (1991) (footnotes omitted).
[5] For example, compare opinions adopting the majority position in Bahre v. Pearl, 595 A.2d 1027, 1034-35 (Me. 1991); Stancil v. Stancil, 326 N.C. 766, 392 S.E.2d 373 (1990); Katz v. Abrams, 549 F. Supp. 668, 671 (E.D.Pa. 1982) (mem.); Baker v. Gotz, 387 F. Supp. 1381, 1390 (D.Del.), aff'd mem., 523 F.2d 1050 (3d Cir.1975); United Independent Insurance Agencies v. Bank of Honolulu, 6 Haw. App. 222, 718 P.2d 1097, 1102 (1986); Smith v. Baker, 715 S.W.2d 890, 892 (Ky. Ct. App. 1986); Gross v. Vogel, 81 A.D.2d 576, 577, 437 N.Y.S.2d 431, 432 (N.Y. App. Div. 1981); Jennison v. Jennison, 346 Pa.Super. 47, 499 A.2d 302, 304 (1985); Kenney v. Porter, 604 S.W.2d 297, 301 (Tex.Civ.App. 1980); Associates Financial Services v. Sevy, 776 P.2d 650, 652 (Utah Ct.App. 1989), rejected on other grounds, Salt Lake City Corp. v. Cahoon and Maxfield Irrigation Co., 879 P.2d 248 (Utah 1994); Wamser v. Bamberger, 101 Wis.2d 637, 305 N.W.2d 158, 162 (App. 1981); with those adopting the minority position in Rhode Island Hospital v. Collins, 117 R.I. 535, 368 A.2d 1225, 1227 (R.I. 1977); Blasingame v. American Materials, Inc., 654 S.W.2d 659, 664 (Tenn. 1983).
[6] See, e.g., Lamp Fair, Inc. v. Perez-Ortiz, 888 F.2d 173 (1st Cir.1989) (majority of courts hold that secured party's conduct in retaining collateral on permanent basis brings transaction within scope of subsection 9-505(2) "retention option," irrespective of whether or not secured party consciously chose to invoke that option); Cooper Investments v. Conger, 775 P.2d 76 (Colo. App. 1989); Wang v. Wang, 440 N.W.2d 740 (S.D. 1989); Herring Min. Co. v. Roberts Bros. Coal Co., Inc., 747 S.W.2d 616 (Ky.App. 1988); H.V. Funding, Inc. v. Ernest Vakkas & Sons, Inc., 140 Misc.2d 587, 531 N.Y.S.2d 484 (Dist.Ct. 1988); Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp., 749 S.W.2d 915 (Tex. Ct. App. 1988); Durdahl v. Bank of Casper, 718 P.2d 23 (Wyo. 1986); Millican v. Turner, 503 So.2d 289 (Miss. 1987); Swanson v. May, 40 Wash. App. 148, 697 P.2d 1013 (1985); Schmode's, Inc. v. Wilkinson, 219 Neb. 209, 361 N.W.2d 557 (1985); Wisconics Engineering, Inc. v. Fisher, 466 N.E.2d 745 (Ind. Ct. App. 1984); ITT Terryphone Corp. v. Modems Plus, Inc., 171 Ga. App. 710, 320 S.E.2d 784 (1984); Shultz v. Delaware Trust Co., 360 A.2d 576 (Del.Super. 1976); Moran v. Holman, 514 P.2d 817 (Alaska 1973); Brownstein v. Fiberonics Industries, Inc., 110 N.J. Super. 43, 264 A.2d 262 (1970).
[7] One commentator has observed an analogue to the involuntary strict foreclosure rule in the rules governing conditional sales under the common law and the Uniform Conditional Sales Act:

At common law, the simple act of repossession barred the action on the debt by the doctrine of election. The Uniform Conditional Sales Act, while eschewing the election doctrine generally, allowed the seller to retain the goods "as his own property" without obligation to the buyer and in discharge of all the buyer's obligations... .
W. Holmes, "Involuntary Strict Foreclosure" Under Section 9-505(2) of the Uniform Commercial Code: Tarpit for the Tardy Creditor, 26 Wake Forest L.Rev. 289, 301 (1991) (footnotes omitted).
[8] See, e.g., IFG Leasing Co. v. Gordon, 776 P.2d 607 (Utah 1989); Warnaco, Inc. v. Farkas, 872 F.2d 539 (2d Cir.1989) (there is no role for extrastatutory rule that contemplates repossession of collateral in full satisfaction of debt where creditor fails to give requisite notice and value of repossessed collateral is less than debt); Alamosa Nat. Bank v. San Luis Valley Grain Growers, Inc., 756 P.2d 1022 (Colo.Ct.App. 1988) (there is no retention of collateral in satisfaction of obligation under § 9-505 when secured party does not give written notice of his intention to so retain); First Bank of South Dakota v. Haberer Dairy & Farm Equipment, Inc., 412 N.W.2d 866 (S.D. 1987) (secured party never sent written notice informing debtors of an intention to retain collateral in satisfaction of debt as required by UCC § 9-505; therefore, no discharge of the debtor's obligation occurred); Bank of Boston International v. Arguello Tefel, 644 F. Supp. 1423 (E.D.NY 1986); Federal Deposit Ins. Corp. v. Tempest Fugat, 75 Or. App. 536, 707 P.2d 81 (1985); American Parts System, Inc. v. T & T Automotive, Inc., 358 N.W.2d 674 (Minn. Ct. App. 1984); Chrysler Credit Corp. v. Mitchell, 94 A.D.2d 971, 464 N.Y.S.2d 96 (1983).
[9] Subsection 679.507(1), Fla. Stat. (1993), provides, in pertinent part, as follows:

If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.
[10] Commentators have described this latter approach as "the best approach" and "the dominant trend." S. Weise, U.C.C. Article 9: Personal Property Secured Transactions, 48 Bus.Law. 1659, 1694 (1993).
[11] The Arkansas Supreme Court has since adopted a rule barring a secured creditor from obtaining a deficiency judgment following a commercially unreasonable disposition. First State Bank of Morrilton v. Hallett, 291 Ark. 37, 722 S.W.2d 555 (1987).