ROTHENBERG, Judge.
Ayman Boutros, M.D. (“Dr. Boutros”) appeals from a final judgment in which the trial court granted Oscar Miñoso, M.D.’s motion for directed verdict, following the jury’s verdict in favor of Dr. Boutros in the amount of $186,779. Oscar Miñoso, M.D. (“Dr. Miñoso”) cross-appeals from the same order, awarding $8,840.33 to Dr. Boutros on his lease guaranty claim. We reverse the trial court’s order directing a verdict in favor of Dr. Miñoso, affirm on Dr. Miñoso’s cross-appeal, and remand to the trial court with instructions to reinstate the jury’s verdict.
Dr. Boutros and Dr. Miñoso were equal owners and managers of a medical practice known as New Vision, The Eye Center of Miami, LLC (“New Vision”). In September 2000, New Vision borrowed money from Wachovia Bank, N.A. (“Wachovia”) and, in return, New Vision executed a Note and Security Agreement, granting Wachovia a security interest in its accounts, inventory, and equipment. New Vision also entered into a business lease agreement which contained an early termination penalty. Dr. Boutros, Dr. Miñoso, and Dr. Boutros’ wife personally guaranteed the Wachovia loan, while Dr. Boutros and Dr. Miñoso personally guaranteed the lease agreement.
New Vision ceased to operate on November 1, 2001. As part of the winding down of the business, Dr. Miñoso suggested that Dr. Boutros take possession of New Vision’s assets. On November 2, 2001, an attorney representing Dr. Bout-ros sent a letter to Dr. Miñoso’s attorney, which noted that Wachovia had placed a lien on the physical assets of the business and that Wachovia intended to sell those assets. Dr. Boutros took possession of New Vision’s equipment and stored them in a warehouse in Virginia. In order to protect the company’s assets, Dr. Boutros paid the Wachovia loan in full on November 2, 2001, and Wachovia assigned its loan documents, including the Note and Security Agreement, to Dr. Boutros on November 19, 2001. Dr. Boutros also paid the early termination penalty due under the lease agreement and, in turn, the landlord assigned its “right to seek enforcement of [Dr. Miñoso’s] obligation to pay one-half (1/2) of the Termination Amount ($26,- *1078 021.06) as required by the Guaranty of Lease.”[1]
In his amended complaint, Dr. Boutros, in his capacity as co-guarantor of thé Wa-chovia loan and business lease agreement, sought from Dr. Mifioso an equitable share of the monies he had paid to satisfy the Wachovia loan and the early termination penalty, asserting the following claims: Count II — equitable contribution; Count V — unjust enrichment; and Count VI— equitable subrogation. In Counts III and IV, Dr. Boutros also filed suit in his capacity as the assignee of the loan and lease agreements, seeking to enforce the written agreements.[2]
Following the presentation of the evidence, the trial court granted Dr. Boutros’ motion for directed verdict on his claim for equitable subrogation. Thereafter, the jury entered its verdict, finding, in part, as follows: 1) Dr. Mifioso had an equitable duty to repay amounts owing under the Wachovia loan and lease agreement; 2) Dr. Mifioso breached his duty to repay the amounts; 3) Dr. Mifioso unjustly benefited from Dr. Boutros’ payments; 4) the damages sustained by Dr. Boutros due to Dr. Mifioso’s conduct was $186,779; 5) Dr. Boutros proved that the laser machine was valued at $95,000; and 6) Dr. Boutros did not prove the value of the items stored in Virginia.
The parties moved for entry of judgment on the verdict. The trial court entered a final judgment, finding that the jury’s verdict was a verdict in favor of the plaintiff. In accordance with the jury’s verdict, the trial court found Dr. Mifioso liable for one-third of the early termination penalty that Dr. Boutros paid to the landlord, and ordered Dr. Mifioso to pay $8,840.33 to Dr. Boutros. The trial court, however, granted Dr. Mifioso’s motion for directed verdict as to Dr. Boutros’ claims regarding the Wachovia loan based on the jury’s finding that Dr. Boutros failed to prove the value of the equipment stored in Virginia. Thus, the trial court reduced Dr. Mifioso’s liability from $186,779 to $8,840.33, finding that he was only liable for one-third of the early termination penalty paid by Dr. Boutros. In reaching this conclusion, the trial court relied on Allen v. Coates, 661 So.2d 879 (Fla. 1st DCA 1995).
In Allen, the court addressed the remedies that are available to a secured party upon the default of a loan under Article 9 of the Uniform Commercial Code (“UCC”), as codified in Chapter 679, Florida Statutes. As explained in Allen, upon default, one of the possible remedies available under Article 9 of the UCC is that the secured party can take possession of the secured collateral without “judicial process,” if he can do so without “breach of the peace,” Allen, 661 So.2d at 883 (citing § 679.503, Fla. Stat. (1995)), and upon taking possession of the collateral, the secured party can “sell, lease or otherwise dispose of any or all of the collateral.” Allen, 661 So.2d at 883 (citing § 679.504(1), Fla. Stat. (1995)). However, the secured party’s disposition or sale of the collateral must be made in a “commercially reasonable” manner. Allen, 661 So.2d at 884. “These rules, in part, seek to protect the debtor, because they help prevent the *1079 creditor from acquiring the collateral at less than its true value or unfairly understating its value so as to obtain an excessive deficiency judgment.” Id.
On appeal, Dr. Boutros contends that the trial court erred in granting Dr. Miño-so’s motion for directed verdict. In support of his contention, Dr. Boutros argues that the trial court’s reliance on Allen, which applied Article 9 of the UCC, is misplaced, as Article 9 does not apply to any of his equitable claims, but applies only to his claim brought as assignee of the Wachovia security agreement. We agree.
In the instant case, Dr. Boutros sought monetary relief from Dr. Miñoso, asserting two separate types of claims: 1) equitable claims in his capacity as a co-guarantor of the Wachovia loan and lease agreement, and 2) legal claims as the assignee of the Wachovia loan and the business lease agreement. As previously stated, following the presentation of the evidence, the trial court granted Dr. Boutros’ motion for directed verdict as to his claim for equitable subrogation. Thereafter, the jury found, in part, that Dr. Miñoso had an equitable duty to repay amounts owing under the Wachovia loan and lease agreement, Dr. Miñoso breached his duty to repay the amounts, Dr. Miñoso unjustly benefited from Dr. Boutros’ payments, and the damages sustained by Dr. Boutros due to Dr. Miñoso’s conduct was $186,779. Based on the jury’s verdict and the trial court’s order directing a verdict in favor of Dr. Boutros on his equitable subrogation claim, there is no doubt that Dr. Boutros prevailed on his equitable claims.
In this appeal, Dr. Miñoso attempts to avoid the jury’s verdict in favor of Dr. Boutros on his equitable claims by arguing that Article 9 of the UCC bars Dr. Boutros from recovering on his equitable claims. Specifically, Dr. Miñoso argues that Dr. Boutros failed to dispose of the equipment in a “commercially reasonable” manner, as required by section 679.504(3), Florida Statutes (2000), and therefore, he is not entitled to judgment in his favor.
In pursuing his action against Dr. Miño-so, Dr. Boutros had the option of pursuing both equitable and legal claims. As his equitable claims were filed in his capacity as a co-guarantor, not as the assignee of the security agreement or as a “secured party,” Article 9 of the UCC, which pertains to “secured transactions,” is not applicable to his equitable claims. Moreover, section 679.504, Florida Statutes (2000), the provision that Dr. Miñoso relies upon, clearly indicates that it applies to a “secured party.”
Our finding is supported by the Second District’s decision in Siltzer v. North First Bank, 445 So.2d 649 (Fla. 2d DCA 1984). In Siltzer, Mr. Siltzer, the president of a company, borrowed money from a bank, and in return, he executed an “Installment Loan Disclosure Statement and Security Agreement,” granting a security interest in the company’s assets, including, its “inventory, equipment, furniture, ... [and] a second mortgage on residence....” Id. at 651. The bank sold the company’s inventory at a private sale, and thereafter, the bank notified Mr. Siltzer that it was applying the proceeds of the private sale to the loan balance. In his declaratory action, and on appeal, Mr. Siltzer argued that because the bank failed to follow the notice requirements set forth in chapter 679, Florida Statutes, when selling the company’s inventory, he was not required to make any additional payments on the second mortgage referenced in the security agreement. The Second District found that the bank’s
failure to comply with the requirements of the U.C.C. by failing to notice appellants of the inventory sale only affects personalty and does not affect the rights *1080 of the mortgagee. The second mortgage as collateral under the note is not governed by the U.C.C. principles, but by general equitable principles governing foreclosure of mortgages.
Siltzer, 445 So.2d at 652 (citation and footnote omitted). Thus, the court in Siltzer recognized that a defense based on the UCC will not affect independent equitable claims, even though the equitable claims and the secured claims stem from the same transaction. Id.; see also In re Eastern Marine, Inc., 104 B.R. 421, 423 (Bkrtcy.N.D.Fla.1989)(“Moreover, an equitable subrogation claim or right is not a security interest under the Uniform Commercial Code. Thus, compliance with the requirements of Article 9 is unnecessary to preserve a dominant right.”). Therefore, as the UCC does not apply to Dr. Boutros’ equitable claims, we reverse the portion of the final judgment granting Dr. Miñoso’s motion for directed verdict, and remand with directions to reinstate the jury’s verdict in favor of Dr. Boutros in the amount of $186,779.
We decline to address the remaining issues raised by the parties,[3] including Dr. Miñoso’s cross-appeal, as we conclude that they are either without merit or need not be resolved based upon our findings herein.
Affirmed, in part, reversed, in part, and remanded for entry of a final judgment in accordance with the jury’s verdict.

. Although only Dr. Boutros and Dr. Mifioso executed personal guaranties for the lease agreement, the Operating Agreement that governs the parties’ relationship with respect to New Vision provides that Dr. Mifioso "personally guaranties one-third of all obligations of [New Vision].”

. Although not relevant to this appeal, Count I of the amended complaint sought a judicial dissolution of New Vision.

. As we have reinstated the jury’s verdict based on our conclusion that the UCC does not apply to Dr. Boutros’ equitable claims, we do not need to address whether the UCC applies to Dr. Boutros’ legal claims brought as the “assignee” of the Wachovia security agreement. In addition, we do not need to address additional issues raised by the parties, such as whether the "UCC presumption” is an affirmative defense; if it is an affirmative defense, did Dr. Miñoso properly plea it in his affirmative defenses; if Dr. Miñoso failed to properly plea the "UCC presumption” in his affirmative defenses, was it tried by the implied consent of Dr. Boutros; and whether Dr. Miñoso waived the "UCC presumption” when he waived his "set-off” defense.